**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE NORTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | CASE NO.: 24-81038-CRJ11 |
| HOMETOWN LENDERS, INC. | ) | |
| EIN: XX-XXX6790 | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

## CHAPTER 11 PLAN OF LIQUIDATION DATED OCTOBER 1, 2024

### INTRODUCTION

Hometown Lenders, Inc., as Debtor and Debtor-in-Possession ("Debtor"), in the above-captioned chapter 11 case, hereby proposes the following Chapter 11 Plan dated October 1, 2024 ("Plan"), pursuant to section 1121(a) of title 11 of the United States Code. Reference is made to the Disclosure Statement dated October 1, 2024 ("Disclosure Statement"), for a discussion of the Debtor's history, business, properties, results of operations, projections for future recoveries, a summary and analysis of this Plan and other related matters.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject this Plan cannot be solicited from a holder of a claim or interest after commencement of this case until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of claims and interests. **ALL HOLDERS OF CLAIMS AGAINST THE DEBTOR ARE ENCOURAGED TO READ THIS PLAN AND THE RELATED DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR TO REJECT THIS PLAN. NO MATERIALS, OTHER THAN THE ACCOMPANYING SOLICITATION MATERIALS AND ANY EXHIBITS ATTACHED THERETO OR REFERENCED THEREIN, HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR THE DEBTOR FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN. THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THIS PLAN PRIOR TO CONFIRMATION.**

### ARTICLE I.
### DEFINITIONS, RULES OF INTERPRETATION, AND CONSTRUCTION

**A.     Defined Terms**.  As used herein, the following terms have the respective meanings specified below, except as expressly provided in other Sections of this Plan, unless the context otherwise requires (such meanings to be equally applicable to both the singular and plural, and masculine and feminine forms of the terms defined). Any capitalized term used in this Plan but not defined herein that is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules.

Section 1.01.    Administrative Claim means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (i) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the business of the Debtor, (ii) Professional Fee Claims, and (iii) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

Section 1.02.    Allowed means, with respect to a Claim, the extent to which a Claim is not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules or orders of the Bankruptcy Court, or otherwise allowed by a Final Order, including, without limitation, the Confirmation Order and (i) scheduled by the Debtor in a liquidated amount and not listed as contingent, unliquidated or disputed, (ii) timely Filed with the Bankruptcy Court, or (iii) late-Filed and Allowed by Final Order after notice and a hearing.

Section 1.03.    Assets means all assets of the Debtor of any nature whatsoever, including, without limitation, all property of the Estate pursuant to section 541 of the Bankruptcy Code, Cash (including proceeds from the Sale), accounts receivable, tax refunds, claims of right, interests and property, real and personal, tangible and intangible, and proceeds of all of the foregoing.

Section 1.04.    Bankruptcy Code means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*.

Section 1.05.    Bankruptcy Court means the United States Bankruptcy Court for the Northern District of Alabama, Northern Division, which has jurisdiction over the Chapter 11 Case.

Section 1.06.    Bankruptcy Court Fees means the quarterly fees assessed in the Chapter 11 Case pursuant to 28 U.S.C. § 1930(a)(7).

Section 1.07.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Local Rules of the Bankruptcy Court.

Section 1.08.    Bar Date means September 2, 2024, the date by which proofs of Claim must be Filed, as applicable.

Section 1.09.    Cash means cash and cash equivalents in U.S. dollars.

Section 1.10.    Cash Collateral Orders mean the any order authorizing the use of cash collateral and granting adequate protection to the Secured Creditors as such term is defined in the Cash Collateral Orders.

Section 1.11.    Chapter 11 Case means case number 24-81038-CRJ11, commenced by the Debtor under chapter 11 of the Bankruptcy Code on the Petition Date in the Bankruptcy Court.

Section 1.12.    Claim means a claim against the Debtor, whether or not asserted or Allowed, and as such term is defined in section 101(5) of the Bankruptcy Code.

Section 1.13.    Class means a group of Claims as classified in Article V under this Plan pursuant to section 1123(a)(1) of the Bankruptcy Code.

Section 1.14.   <u>Collateral</u> means any property or interest in property of the Estate of the Debtor that is subject to an unavoidable Lien to secure the payment or performance of a Claim.

Section 1.15.   <u>Confirmation Date</u> means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

Section 1.16.   <u>Confirmation Hearing</u> means the hearing or hearings conducted by the Bankruptcy Court to consider confirmation of this Plan as this Plan may be modified hereafter from time to time.

Section 1.17.   <u>Confirmation Order</u> means the Order, entered by the Clerk of the Bankruptcy Court, confirming this Plan in accordance with the provisions of the Bankruptcy Code.

Section 1.18.   <u>Debtor</u> means Hometown Lenders, Inc.

Section 1.19.   <u>Disallowed</u> means the extent to which a disputed claim is not Allowed whether by Final Order of the Bankruptcy Court, by agreement of the parties or otherwise.

Section 1.20.   <u>Disbursing Agent</u> means a Person duly-appointed and authorized by the Bankruptcy Court to make Distributions under this Plan pursuant to the Confirmation Order.

Section 1.21.   <u>Disclosure Statement</u> means the written disclosure statement (and all exhibits annexed thereto or referred to therein) that relates to this Plan, as amended, supplemented, or modified from time to time.

Section 1.22.   <u>Disclosure Statement Hearing</u> means the hearing conducted by the Bankruptcy Court to consider the adequacy of the information contained in the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

Section 1.23.   <u>Disclosure Statement Order</u> means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

Section 1.24   <u>Distribution</u> means the distribution to holders of Claims in accordance with this Plan of any Assets, or other consideration distributed under Articles IV or V herein.

Section 1.25.   <u>Distribution Address</u> means the address set forth in the relevant proof of claim, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).   If no proof of claim is Filed in respect of a particular Claim, such defined term means the address set forth in the Debtor's Schedules, as such address may have been updated pursuant to Bankruptcy Rule 2002(g).

Section 1.26.   <u>Distribution Date</u> means any date on which the Disbursing Agent determines that an interim Distribution, under or in accordance with this Plan, should be made to holders of Allowed Claims in light of, *inter alia*, liquidation of Assets and the administrative costs of such a distribution.

Section 1.27.   Effective Date means a Business Day, selected by the Debtor, which is thirty (30) days after the Confirmation Date, or as soon thereafter as practicable, on which all conditions to the Effective Date have been satisfied or, if permitted, waived by the Debtor, and on which no stay of the Confirmation Order shall be pending.

Section 1.28.   Equity Interests means the interest of William "Billy" Taylor, Jr., who is the sole shareholder of all of the issued and outstanding stock in Hometown Lenders, Inc.

Section 1.29.   Estate means the estate of Hometown Lenders, Inc in its Chapter 11 Case created by section 541 of the Bankruptcy Code upon the commencement of such Chapter 11 Case.

Section 1.30.   Exhibit(s) means an exhibit to this Plan or the Disclosure Statement.

Section 1.31.   File or Filed means file or filed with the Bankruptcy Court in the Chapter 11 Case.

Section 1.32.   Final Order means an order as to which the time to appeal, petition for certiorari, or move for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for re-argument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, move for re-argument, or rehearing shall have been waived in writing or, in the event that an appeal, writ of certiorari, or re-argument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which re-argument or rehearing was sought, and the time to take any further appeal, petition for certiorari or motion for re-argument or rehearing shall have expired.

Section 1.33.   General Unsecured Claim means an unsecured Claim that is not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Claim, or a Priority Non-Tax Claim.

Section 1.34.   Impaired means any Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

Section 1.35.   Lien means any charge against, security interest in, encumbrance upon or other interest in property to secure payment of a debt or performance of an obligation.

Section 1.36.   NQDC Plan means The Hometown Lenders, Inc. Deferred Compensation Plan, a Non-qualified Deferred Compensation Plan, which is a nonqualified deferred compensation plan, held by Principal Life Insurance Company, that complies with the provisions of Section 409A of the Internal Revenue Code.

Section 1.37.   Order means an order or judgment of the Bankruptcy Court as entered on the jointly administered docket in the Chapter 11 Case as maintained by the Clerk of the Bankruptcy Court.

Section 1.38.   Person means an individual, corporation, general partnership, limited partnership, limited liability company, limited liability partnership, association, joint venture, trust,

estate, unincorporated organization, governmental authority, governmental unit or any agency or political subdivision thereof, or any entity of whatever nature.

Section 1.39.   Petition Date means June 3, 2024, the date upon which the chapter 11 petition of Debtor was Filed with the Bankruptcy Court.

Section 1.40.   Plan means this chapter 11 plan of liquidation, including, without limitation, the exhibits hereto, as such may be altered, amended, or otherwise modified from time to time.

Section 1.41.   Prepetition Claim means any Claim arising prior to the Petition Date of the Debtor.

Section 1.42.   Priority Claim means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim, or (ii) a Priority Tax Claim.

Section 1.43.   Priority Tax Claim means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

Section 1.44.   Professional Fees means any unpaid fees and expenses of Professionals, as such fees and expenses are allowed by the Bankruptcy Court.

Section 1.45.   Professional Fee Claim means a Claim for compensation, indemnification, or reimbursement of expenses pursuant to sections 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Chapter 11 Case incurred on or after the Petition Date and prior to the Effective Date.

Section 1.46.   Professionals mean the attorneys, accountants, financial advisors, and other professionals whose retention by the Debtor has been approved by the Bankruptcy Court in the Chapter 11 Case.

Section 1.47.   Pro-Rata or Ratable Share means a number (expressed as a percentage) equal to the proportion that an Allowed Claim bears to the aggregate amount or number of Allowed Claims in such Class as of the date of determination.

Section 1.48.   Sale means the sale of those certain Assets of the Debtor as approved by the Bankruptcy Court and set forth in Article VI of this Plan.

Section 1.49.   Schedules means the schedules of assets and liabilities and the statement of financial affairs, as each may be amended or supplemented from time to time, Filed by the Debtor as required by section 521 of the Bankruptcy Code and the Bankruptcy Rules.

Section 1.50.   Secured Claim means a Claim secured by a Lien on any Asset of the Debtor, or right of setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest of the holder of the Claim in property of the Estate securing such Claim.

**B. Rules of Construction.**

Section 1.51.  <u>Generally</u>.  For purposes of this Plan, (i) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit as it may have been or may be amended, modified or supplemented; (ii) unless otherwise specified, all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan or the Disclosure Statement; and (iii) the rules of construction set forth in section 102 of the Bankruptcy Code and the Bankruptcy Rules shall apply unless superseded herein or in the Confirmation Order.

Section 1.52.  <u>Time Periods</u>.  In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006(a) shall apply.

Section 1.53.  <u>Miscellaneous Rules</u>.

(a)  The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection, or clause, unless the context requires otherwise;

(b)  Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter; and

(c)  Captions and headings to Articles and Sections of this Plan are inserted for convenience of reference only and are not intended to be a part or to affect the interpretation of this Plan.

## ARTICLE II.
## GENERAL RULES REGARDING CLASSIFICATION OF CLAIMS

Section 2.01.  <u>General Rules of Classification Under the Bankruptcy Code</u>.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes as set forth below. All other Claims have been classified as set forth below.

A Claim is classified in a particular Class only to the extent that the Claim falls within the description of that Class and is classified in other Class(es) to the extent that any remainder of the Claim falls within the description of such other Class(es).

A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

Section 2.02.  <u>Undersecured Claims</u>.  Other than as provided herein, to the extent that the amount of an Allowed Claim is greater than the value of the Collateral securing such Claim as of the applicable valuation date (assuming the value of such Collateral is greater than $0), subject to section 1111(b) of the Bankruptcy Code, such Claim is classified in both the Class of Secured

Claims for the secured portion of such Claim and the Class of General Unsecured Claims for the excess of such Claim over the value of the Collateral. Notwithstanding anything to the contrary herein, absent an order of the Bankruptcy Court or agreement fixing the allowed amount of a Secured Claim or the scheduling of such Claim as liquidated, non-disputed, and noncontingent on the Debtor's Schedules, the Debtor is not bound by a classification made or implied herein with respect to any particular Claim.

Section 2.03. <u>Elimination of Classes</u>. Any Class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily Allowed under Rule 3018 of the Bankruptcy Rules shall be deemed deleted from this Plan for purpose of voting on acceptance or rejection of this Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

# ARTICLE III.
# <u>CLASSIFICATION OF CLAIMS</u>

Section 3.01. <u>Summary</u>. Equity Interests are addressed in Section 5.04 of this Plan. Claims, other than Administrative Claims, are classified for all purposes, including voting, confirmation, and distribution, as follows:

| Classification | Type of Claim or Equity | Treatment | Est. Recovery | Impaired | Voting |
|---|---|---|---|---|---|
| None | Administrative Expense | All Administrative Expense Claims (Other than Professional Fees) must be paid by application filed with the Bankruptcy Court no later **than 30 days after the Effective Date of the Plan.** Debtor shall have 30 days to Object to said claim after it has been filed. | 100% | N/A | No |
| None | Professional Fee Claims | All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court no later than sixty (60) days after the Effective Date. Any party in interest shall have the right to object to a Professional Fee Claim. Objections to Professional Fee Claims shall be filed within fourteen (14) days from the filing and service of the Professional Fee Claim. | 100% | N/A | No |
| None | Bankruptcy Administrator Fees | All fees payable in the Cases under 28 U.S.C. §1930, as agreed by the Debtors or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the | 100% | N/A | No |

| | | | | | |
|---|---|---|---|---|---|
| | | Debtors as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Case | | | |
| None | Priority Tax Claims | Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, the Debtors shall pay to each holder of an Allowed Priority Tax Claim, if any, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Priority Tax Claim is Allowed. | 100% | NA | No |
| Class 1 | Secured Claims | Class 1 consists of the secured claims of creditors shown on Schedule 3. Class 1 is impaired under the Plan. The holders of Class 1 Claims are entitled to vote on the Plan. Each Class 1 Allowed Claim shall be paid pursuant to the terms of the Plan. | Unknown | Yes | Yes |
| Class 2 | Priority Non-Tax Claims | Class 2 consists of the Priority Non-Tax Claim on Schedule 4.   Except to the extent that a holder of an Allowed Claim in this class agrees to a different treatment, on the later of the Effective Date, or as soon as is reasonably practicable after such Allowed Priority Non-Tax Claim is Allowed, each holder of an Allowed Class 2 Claim shall receive payment of one hundred percent (100%) of the Allowed amount of such Class 2 Claim after all Allowed Claims after all unclassified claims under the Plan are paid in full or otherwise treated as provided for under the Plan. | Unkown | Yes | Yes |
| Class 3 | General Unsecured Claims | On the later of the Effective Date, or as soon as is reasonably practicable after all Allowed General Unsecured Claims are Allowed or Disallowed, the holders of Allowed General Unsecured Claims shall receive their Pro Rata Share of all remaining distributions under the Plan, if any, after all Allowed Unclassified | Unknown | yes | yes |

| | | Claims and Allowed Claims in Classes 1 and 2 are paid in full or otherwise treated as provided for under the Plan. | | | |
|---|---|---|---|---|---|
| Class 4 | Equity Interest | Equity Interest Holder shall receive on account of its interests in the debtor a distribution, if any, after all Allowed Claims in Classes 1-3 are paid in full or otherwise satisfied as provided for in the Plan.   The Debtor does not expect that a distribution will be made to the Equity Interest holder. | none | yes | yes |

# ARTICLE IV.
# TREATMENT OF UNCLASSIFIED CLAIMS

Section 4.01.   Administrative Claims:

1.   *Administrative Claims*.   An Administrative Claim is defined in this Plan and means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation:  (i) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the business of the Debtor, (ii) Professional Fee Claims, (iii) Bankruptcy Court Fees, and (iv) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

(a)     The Debtor estimates that the amount of accrued but unpaid Administrative Claims will be in the range of approximately $10,000 (excluding Professional Fee Claims). This amount is subject to change as no Bar Date for Administrative Claims has been established. The holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of the Allowed amount of such Administrative Claim or (ii) such other less favorable treatment as to which the Debtor and such holder shall have agreed upon in writing.

(b)     Professional Fee Claims. All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court no later than sixty (60) days after the Effective Date. Any party in interest shall have the right to object to a Professional Fee Claim. Objections to Professional Fee Claims shall be filed within fourteen (14) days from the filing and service of the Professional Fee Claim.   Except to the extent the holder of an Allowed Administrative Claim for Professional Fees agrees, each holder of an Allowed Administrative Claim for Professional Fees will be paid in full as of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

(c)     Fees Under 28 U.S.C. §1930. All fees payable in the case under 28 U.S.C. §1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtor

as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Case.

(d)      Estimation of Administrative Claims.   The Debtor reserves the right, for purposes of allowance and distribution, to seek to estimate any unliquidated Administrative Claim, if the fixing or liquidation of such Administrative Claim would unduly delay the administration of and distributions under this Plan.

(e)      Administrative Bar Date.   All Administrative Claims not filed by any applicable Administrative Claim Bar Date for the filing of such Claims shall be deemed waived.   The Administrative Claim Bar Date for all holders of Administrative Claims, except those of Professionals and for Bankruptcy Court Fees, shall be as provided in the Confirmation Order.

2.      *Priority Tax Claims*:   Priority Tax Claims consist of any Allowed Priority Claims owed governmental units under §507(a)(8) of the Bankruptcy Code.   Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, Debtor shall pay to each holder of an Allowed Priority Tax Claim, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Priority Tax Claim is Allowed.

## ARTICLE V.
## TREATMENT OF CLASSIFIED CLAIMS

The holders of Allowed Claims in each Class shall receive the following distributions where applicable, on or after the Effective Date, in accordance with this Plan:

Section 5.01    Secured Claims:

**Class 1.**      This Class consists of the Allowed Secured Claims shown on Schedule 3. Except to the extent the holder of an Allowed Secured Claim agrees, Debtor shall pay to each holder of an Allowed Secured Claim, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Secured Claim is Allowed.

Section 5.02    Priority Non-Tax Claims:

**Class 2.**      Priority Non-Tax Claims consist of all Allowed Priority Claims for pre-petition wages, up to a maximum amount of $15,150 earned within the 180 days prior to the Petition Date or the date the Debtor ceased business, which ever occurred first, under §507(a)(4) of the Bankruptcy Code. These claims are impaired, and their treatment is predicated upon the acceptance by the Allowed Claims in this Class pursuant to §1129(a)(9)(B) of the Bankruptcy Code.   Holders of claims in this Class are shown on Schedule 4.

Section 5.03    Non-priority Unsecured Claims:

**Class 3.**      This Class consists of all allowed general unsecured claims which are impaired.   The total amount of unsecured claims exceeds $52,891,864.   The claims are of every kind and nature including claims arising from corporate guarantees, the rejection of executory

contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims and damages arising from all obligations including, but not limited to, all liquidated, contingent and unliquidated claims relating to any liability asserted against the Debtor based on any theory of liability whether on contract, tort, or equity. It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court. Holders of general unsecured claims without priority which are Allowed Claim shall be paid a pro rata distribution from the Liquidation Fund (Liquidation Fund to be established). No Holders of Allowed General Unsecured Claims shall be entitled to receive post-petition interest on its Allowed Claim.

Section 5.04    Equity Interest Holder:

**Class 4.**        This Class consists of the equity interest of William E. Taylor Jr. ("Taylor"), who owns all of the issued and outstanding membership interests in the Debtor. The claim of Taylor as the equity interest holder is impaired. Taylor's outstanding equity in the Debtor is to be cancelled, and Taylor will not receive any distribution under the terms of this Plan.

**ARTICLE VI.**
**IMPLEMENTATION OF PLAN**

Section 6.01.    Implementation.    This Plan will be implemented by the Debtor in a manner consistent with the terms and conditions set forth in this Plan and in the Confirmation Order. The primary sources for funding this Plan are as follows (hereinafter "Liquidation Fund"):

1.      *Flagstar.*

(a)      The Settlement Proceeds with Flagstar Bank in the approximate amount of $269,857.99.

(b)      The Sale Proceeds from the Mortgages owned by the Debtor. As previously discussed, Flagstar is assigning and transferring to the Debtor forty-nine (49) home mortgages which it held as additional collateral for its loan. It is expected that some of these mortgages will be paid off due to the drop in interest rates as a result of the Federal Reserve cutting the federal funds rate which acts as a benchmark for home mortgage rates. The Debtor expects to sell the remaining mortgages pursuant to a motion filed with the Court pursuant to § 363 of the Bankruptcy Code.

The total value of these mortgages is presently unknown and varies based on market forces such as interest rates. The Debtor will sell these mortgages by using a bid process to ensure the highest price. Debtor will solicit bids to purchase these mortgages from industry buyers however, the Debtor does not have a formal offer to purchase the mortgages at this time. Subject to the Court's approval, Debtor anticipates initial shall be subject to higher and better offers from potential buyers   subject to a final subject to a final opportunity to submit a "best and final" offer.

Without limitation, each bid must provide that (a) the purchase price shall be "all cash" payable at the closing and (b) the bidder's obligation to close shall not be conditioned

upon obtaining acquisition financing, the completion of any additional due diligence or any other contingency, other than the approval by the Bankruptcy Court.

2. *Cash Value of Life Insurance Policies.*

(a) As discussed above, the Debtor has reached an agreement with Principal Life regarding the surrender of certain life insurance policies and the turnover of the Cash Value to the Debtor. These policies were purchased by the Debtor to fund its obligations owed to plan participants under its NQDC Plan and the Debtor owns these policies. As of June 26, 2024, the cash value of these insurance policies was approximately $856,516.17 ("Cash Value").

3. *ERTC Claim.*

(a) Debtor will also fund all obligations under this Plan using the proceeds from an Employee Retention Credit ("ERTC") in the approximate amount of $22,000,000.

Section 6.02. <u>Distributions to Holders of Claims</u>.

1. *Estimation of Claims*. The Debtor may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of this Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under this Plan to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party-in-interest previously objected to such Claim; and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

2. *No Recourse*. Notwithstanding that the allowed amount of any particular disputed claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor or the Estate or any of their respective professionals, consultants, officers, directors or members or their successors or assigns, or any of their respective property.

3. *Objections to Claims*. Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, Debtor shall have the exclusive right to make, file and prosecute objections to and settle, compromise, or otherwise resolve disputed claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance

with the applicable Bankruptcy Rules by parties-in-interest. Subject to further extension by the Bankruptcy Court, the Debtor shall file and serve a copy of each objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) one hundred-twenty (120) days after the Effective Date, (ii) thirty (30) days after a request for payment or proof of claim is timely Filed and properly served upon the Debtor, or (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods.

Section 6.03. <u>Miscellaneous Distribution Provisions</u>.

1. *Method of Cash Distributions*. All Distributions of Cash pursuant to this Plan shall be made by the Debtor or a duly-appointed Disbursing Agent to the holders of Allowed Claims entitled to receive Cash under this Plan. Cash payments made pursuant to this Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or a duly appointed Disbursing Agent or by wire transfer from a domestic bank.

2. *Accrual of Post-petition Interest*. Unless otherwise provided for in this Plan or the Bankruptcy Code, no holder of a pre-petition Allowed Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

3. *No Distribution in Excess of Allowed Amount of Claim*. Notwithstanding anything to the contrary herein or in the Disclosure Statement, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

4. *De Minimus Distributions*. Notwithstanding anything to the contrary contained herein or in the Disclosure Statement, if the amount of Cash to be distributed to the holder of an Allowed Claim is less than $25, the Debtor may hold the Cash Distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $25, if the Debtor determines that the cost to distribute such Cash is unreasonable in relation to the amount of Cash to be distributed. Notwithstanding the preceding sentence, if the amount of Cash Distribution to such holder never aggregates to more than $25, then on the final Distribution Date, the Debtor shall distribute such Cash to the holder entitled thereto.

5. *Allocation of Payments*. Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

6. *Setoffs*. The Debtor is authorized, pursuant to and to the extent permitted by section 553 of the Bankruptcy Code, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided that the Debtor gives the holder of such Allowed Claim notice of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days; provided that if an objection is timely raised to a proposed setoff, the Debtor may seek relief from the Bankruptcy Court to effectuate the setoff; provided, further, that neither the failure to effect such a setoff nor the allowance of any Claim under this Plan shall constitute a waiver or release by the Debtor of any such claims, rights and Causes of Action that the Debtor may possess against such holder.

7. *Unclaimed Property*. Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor or the Disbursing Agent, as the case may be, have been notified in writing of a change of address. In the event that any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before one hundred and twenty (120) days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Debtor and be treated as Available Cash. Any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Debtor and its property or the Disbursing Agent.

8. *Disputed Payments*. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtor and its Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement assigned by all of the interested parties to such dispute.

9. *Withholding Taxes*. In connection with this Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by federal, state, and local taxing authorities, and all Distributions shall be subject to such withholding and reporting requirements.

10. *Resignation, Death, or Removal of Death*. The Debtor may resign at any time upon not less than thirty (30) days' written notice to the Bankruptcy Administrator. The Debtor may be removed at any time by the Bankruptcy Administrator for cause upon application to the Bankruptcy Court on five (5) days' written notice to the Debtor and its counsel. In the event of the resignation, removal, death or incapacity of the Debtor, the Bankruptcy Administrator shall designate another Person to become a Disbursing Agent and thereupon the successor Disbursing Agent, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor. No successor Disbursing Agent hereunder shall in any event have any liability or responsibility for the acts or omissions of any his predecessors.

11. *No Agency Relationship*. Neither the Debtor nor a Disbursing Agent shall be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to this Plan. The Debtor, including its accountants and attorneys, shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the such person or entity. The Debtor and its accountants and attorneys, shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of their duties under this Plan, except to the extent their actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Debtor may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other

instrument or document which it believes to be genuine and to have been signed or presented by the proper party or parties. The Debtor or any Disbursing Agent may rely upon information previously generated by the Debtor and such additional information provided to it by former employees of the Debtor.

12. *Continuing Existence*. From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible; (ii) liquidating, by conversion to Cash, or other methods, of any remaining Assets, as expeditiously as reasonably possible; (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution of Causes of Action; (iv) resolving disputed claims; (v) administering this Plan; (vi) making disbursements to Allowed Claim Holders; (vii) filing appropriate tax returns; and (viii) performing all such other acts and conditions required by and consistent with consummation of the terms of this Plan.

13. *Closing of the Chapter 11 Case*. When all disputed claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets abandoned), and such Cash has been distributed in accordance with this Plan, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

# ARTICLE VII.
## EFFECT OF THIS PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

Section 7.01. <u>Jurisdiction of Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction over the Debtor and its Estate as provided for in Article X below.

Section 7.02. <u>Binding Effect</u>. Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and their respective successors and assigns, whether or not the Claim of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

Section 7.03. <u>Term of Injunctions or Stays</u>. Unless otherwise provided in this Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

Section 7.04. <u>Retention of Rights and Causes of Action</u>. All present or future rights, claims or causes of action against any Person that existed and which have not been released on or prior to the Effective Date are preserved for the Debtor and its Estate. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtor shall have possession and control of and the right to enforce and pursue, any and all present or future rights, claims or causes of action, against any Person and with respect to any rights of the Debtor that arose before or after the Petition Date. In pursuing any claim, right or cause of action, the Debtor, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in this Plan, all causes of action shall survive confirmation and the commencement or prosecution of causes of action shall not be barred or limited by any

estoppel, whether judicial, equitable or otherwise.

Section 7.05.   Preservation of Avoidance Actions.   Notwithstanding anything in this Plan to the contrary, all of the Debtor's avoidance actions under chapter 5 of the Bankruptcy Code are preserved for the Debtor and its Estate and may be pursued by the Debtor.

## ARTICLE VIII.
## EXECUTORY CONTRACTS

Section 8.01.   Executory Contracts and Unexpired Leases.   To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, any executory contract or unexpired lease which has not been specifically assumed by the Debtor pursuant to section 365 of the Bankruptcy Code before the Effective Date shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

Section 8.02.   Rejection Damages Bar Date.   If the rejection by the Debtor, pursuant to this Plan or otherwise, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its property unless a proof of claim is Filed with the clerk of the Bankruptcy Court and served upon the Debtor, as applicable, not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

Section 8.03.   Effect of Post-Confirmation Rejection.   The entry by the Bankruptcy Court on or after the Confirmation Date of an Order authorizing the rejection of an executory contract or unexpired lease shall result in such rejection being a pre-petition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

## ARTICLE IX.
## CONFIRMABILITY AND SEVERABILITY OF A PLAN AND CRAMDOWN

Section 9.01.   Confirmability and Severability of a Plan.   Subject to Section 10.07 of this Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan. If the Debtor revokes or withdraws from this Plan then nothing contained herein or in the Disclosure Statement shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any persons in any further proceedings involving the Debtor.   A determination by the Bankruptcy Court that this Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor' ability to modify this Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code. Each provision of this Plan shall be considered separable and, if for any reason any provision or provisions herein are determined to be invalid and contrary to any existing or future law, the balance of this Plan shall be given effect without relation to the invalid provision.

Section 9.02.   Cramdown. The Debtor shall have the right to request and does hereby request, if necessary, that the Bankruptcy Court to confirm this Plan in accordance with section 1129(b) of the Bankruptcy.

# ARTICLE X.
## ADMINISTRATIVE PROVISIONS

Section 10.01.   Retention of Jurisdiction.   Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for all purposes permitted under applicable law, including, without limitation, the following purposes:

(a)   To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(b)   To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

(c)   To ensure that distributions to holders of Allowed Claims are accomplished as provided in this Plan;

(d)   To hear and determine objections to the allowance of Claims, whether Filed, asserted, or made before or after the Effective Date;

(e)   To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

(f)   To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(g)   To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

(h)   To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)   To hear and determine all Professional Fee Claims;

(j)   To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)   To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein or in the Disclosure Statement, or to maintain the integrity of this Plan following consummation;

(l)  To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)  To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)  To enter a final decree closing the Chapter 11 Case;

(o)  To recover all assets of the Debtor and property of the Estate, wherever located; and

(p)  To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

Section 10.02.  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Plan shall be governed by the laws of the State of Alabama, without giving effect to principles of conflicts of law of Alabama.

Section 10.03.  <u>Effectuating Documents; Further Transactions</u>.  The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

Section 10.04.  <u>Waiver of Bankruptcy Rules 3020(e) and 7062</u>.  The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate this Plan immediately after entry of the Confirmation Order.

Section 10.05.  <u>No Admissions</u>.  Notwithstanding anything herein or in the Disclosure Statement to the contrary, nothing contained in this Plan or in the Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

Section 10.06.  <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with Article IV of this Plan.

Section 10.07.  <u>Amendments</u>.

1.  *Pre-confirmation Amendment*.  The Debtor may modify this Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of section 1125 of the Bankruptcy Code, among others.

2.  *Post-confirmation Amendment Not Requiring Resolicitation*.  After the entry of the Confirmation Order, the Debtor may modify this Plan to remedy any defect or omission or to reconcile any inconsistencies in this Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of this Plan, provided that: (i) the Debtor obtain approval of the

Bankruptcy Court for such modification, after notice and a hearing; and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or Distributions of any Class under this Plan.

3.     *Post-confirmation Amendment Requiring Resolicitation*.   After the Confirmation Date and before the Effective Date of this Plan, the Debtor may modify this Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each class affected by such modification; and (iv) the Debtor comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified.

Section 10.08.   Successors and Assigns.   The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the, heir, executor, agent, successor or assign of such Person.

Section 10.09.   Confirmation Order and Plan Control.   To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtor and any third party, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls this Plan.

Section 10.10.   Notices.   Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) overnight delivery service, postage prepaid, and addressed as follows:

For the Debtor:                                      with copies to:

Hometown Lenders, Inc.                      Heard, Ary & Dauro, LLC
188 Tanner Road                                  Attn: Kevin D. Heard, Esq.
New Market, AL 35761-9781              Attorneys for the Debtor
                                                              303 Williams Avenue SW, Suite 921
                                                              Huntsville, Alabama 35801

## XI.
## VOTING REQUIREMENTS, ACCEPTANCE, CONFIRMATION, AND CONSUMMATION OF THE PLAN

Section 11.01.   General.   To confirm this Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning this Plan and the Debtor, including that: (i) this Plan classifies Claims in a permissible manner; (ii) this Plan complies with the applicable provisions of the Bankruptcy Code; (iii) the Debtor comply with the applicable provisions of the Bankruptcy Code; (iv) the Debtor has proposed this Plan in good faith and not by any means forbidden by law; (v) the disclosure required by section 1125 of the Bankruptcy Code has been made; (vi) this Plan has been accepted by the requisite votes of holders of Claims, except to the extent that "cram-down" is available under section 1129(b) of the Bankruptcy Code (see below

discussion on "Cram-down," Section 11.03); (vii) this Plan is feasible and confirmation of this Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation is proposed under this Plan; (viii) this Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted this Plan (see Section 11.05 entitled "Best Interests of Creditors"); (ix) all fees and expenses payable under 28 U.S.C. § 1930 (relating to bankruptcy fees payable to the clerk of the Bankruptcy Court) have been paid or this Plan provides for the payment of such fees on the Effective Date; (x) if applicable, this Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, at the level established at any time prior to confirmation of this Plan pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the Debtor has obligated itself to provide such benefits; and (xi) the Debtor must have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of this Plan, as a director or officer of the Debtor or as successor to the Debtor under this Plan, and the appointment to or continuance in such office by such individual must be consistent with public policy.

The Debtor believes that this Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code. Certain of these requirements are discussed in more detail below. The Debtor has proposed this Plan in good faith.

Section 11.02. <u>Acceptance Requirements</u>. The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by creditors that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims of such class who actually vote for acceptance or rejection of a plan. The vote of a holder of a claim may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Section 11.03. <u>Confirmation Without Acceptance of All Impaired Classes ("Cram-down")</u>. In the event that a plan otherwise satisfies the Bankruptcy Code's requirements for confirmation, but one or more classes of Claims votes to reject this Plan, a debtor has the right to seek confirmation of its plan under the "cram-down" provisions of the Bankruptcy Code.

The Bankruptcy Court can "cram-down" this Plan at the Debtor's request only if at least one impaired Class of Claims, (excluding the votes of insiders), has accepted this Plan and all other requirements of section 1129(a) of the Bankruptcy Code are satisfied.

In addition, the Bankruptcy Court must find that, as to each impaired Class that has not accepted this Plan, this Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.

A plan does not "discriminate unfairly" within the meaning of the Bankruptcy Code if the dissenting class will receive value relatively equal to the value given to all other similarly situated classes. A plan is "fair and equitable" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or interests.

A plan is "fair and equitable" as to a class of secured claims that rejects a plan if the plan provides (a)(i) that the holders of claims included in the rejecting class retain the liens securing those claims whether the property subject to those liens is retained by the debtors or transferred to another entity, to the extent of the allowed amount of such claims, and (ii) that each holder of a claim of such Class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, equal to at least the value of the holder's interest in the estate's interest in such property; or (b) for the realization by such holders of the indubitable equivalent of such claims.

If a class of unsecured claims rejects a plan, the plan may still be confirmed as long as the plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (b) that the holder of any claim or any interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

If a class of interests rejects a plan, the plan may still be confirmed as long as the plan provides (a) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) that the holder of any interest that is junior to the interest of such class will not receive or retain under the plan on account of such junior interest any property at all.

Under this Plan, no holder in a Class of Claims is to receive Cash or other property in excess of the full amount of its Allowed Claim. Moreover, no claim or interest that is junior to the holders of General Unsecured Claims or Litigation Claims will receive any distribution under this Plan. Accordingly, the Debtor believe that this Plan does not discriminate unfairly as to any impaired Class of Claims and is fair and equitable with respect to each such Class under section 1129(b) of the Bankruptcy Code.

Section 11.04.  Feasibility of this Plan.  In connection with confirmation of this Plan, the Bankruptcy Court will have to determine that this Plan is feasible pursuant to section 1129(a)(11), which means that confirmation of this Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless this Plan provides for the liquidation of the Debtor.  Since this Plan provides for the liquidation of the Debtor, the Bankruptcy Court will find that this Plan is feasible if it determines that the Debtor will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating this Plan with sufficient funds to proceed with the liquidation of the Debtor's remaining assets.  The Debtor believes that this Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code.

Section 11.05.  Best Interests of Creditors.  To confirm this Plan over the objections of dissenting holders of impaired Claims, the Bankruptcy Court must also independently determine that this Plan is in the "best interests" of all dissenting holders of Claims impaired under this Plan. Under the "best interests" test, the Bankruptcy Court must find that this Plan provides to each

dissenting holder of an impaired Claim a recovery of a value at least equal to the value, as of the Effective Date, of the distribution that each such holder would receive were the Debtor liquidated under chapter 7 of the Bankruptcy Code. Since it is the Debtor' belief that this Plan is comparable to a liquidation, a liquidation under chapter 7 of the Bankruptcy Code would merely increase administrative costs in the form of chapter 7 trustee's fees and other professional fees.

<h2 style="text-align:center">XII.<br>CERTAIN RISK FACTORS TO BE CONSIDERED</h2>

The formulation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case. This Plan sets forth the means for satisfying the holders of Claims against the Debtor.

The recovery projections included in the Disclosure Statement are dependent upon certain matters, most of which are beyond the control of the Debtor and some of which may well not materialize. Unanticipated events and circumstances occurring subsequent to the preparation of the projections may affect the actual recoveries. Therefore, the actual recoveries achieved by the Debtor may vary from the projected recoveries included herein. These variations may be material.

<h2 style="text-align:center">XIII.<br>FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN</h2>

The federal income tax consequences of this Plan are complex and subject to significant uncertainties. Neither the Disclosure Statement nor this Plan address foreign, state or local tax consequences of this Plan, nor do they purport to address all of the federal income tax consequences of this Plan. This Plan and the Disclosure Statement also do not purport to address the federal income tax consequences of this Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals.

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THIS PLAN.**

**IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS in Circular 230, you are hereby informed that (i) any tax advice contained in this Plan is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code, (ii) the advice is written to support the promotion or marketing of the transactions or matters addressed in this Plan, and (iii) each holder of a Claim should seek advice based on its particular circumstances from an independent tax advisor.**

The Debtor is exempt from federal income tax pursuant to section 501 of the Internal Revenue Code. Accordingly, the Debtor does not believe that the implementation of this Plan,

including the extinguishment of the Debtor's outstanding indebtedness pursuant to this Plan, will result in any material tax liability to the Debtor.

## XIV.
## ALTERNATIVES TO CONFIRMATION OF THIS PLAN

The Debtor believes that this Plan affords the holders of Claims the potential for the greatest realization on the Debtor's Assets and, thus, is in the best interests of such holders. If this Plan is not confirmed, however, the alternative would be the liquidation of the Debtor's remaining Assets and distribution to creditors under chapter 7. The Liquidation Fund from which payment to Creditors is to be made exists largely due to the efforts of the Debtor as outlined in this Plan. Moreover, creation of that part of the Liquidation Fund from the Sale of the Mortgages for the highest price requires certain knowledge and expertise which the Debtor possesses.  Moreover, the Debtor possesses knowledge and information that will allow it to recover the Cash Value from the Principal and will also allow the Estate to reduce the amount of Allowed Claims to those actually owed.   Thus, the Debtor believes that this Plan is significantly better for creditors than a chapter 7 liquidation.

## XV.
## ALTERNATIVE PLANS OF REORGANIZATION

If this Plan is not confirmed, the Debtor or any other party-in-interest in the Chapter 11 Case could propose a different plan or plans. Since this Plan proposed by the Debtor is a plan of liquidation, the Debtor does not believe that an alternative plan could provide greater recoveries than those provided in this Plan.  Moreover, the filing of alternative plans would result in additional costs in administering the Chapter 11 Case and significant delays in making distributions.

## XVI.
## CONFIRMATION HEARING

The Court shall set a date and time for hearing on confirmation of this Plan.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned hearing. Any objection to confirmation must be made in writing, filed with the Clerk of the Bankruptcy Court and served upon the Debtor together with proof of service thereof, so as to be ACTUALLY RECEIVED on or before the date set for Confirmation.

Objections to confirmation of this Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## ARTICLE XVII.
## <u>CONCLUSION</u>

The Debtor submits that this Plan complies in all respects with chapter 11 of the Bankruptcy Code and the Debtor recommends to holders of Claims who are entitled to vote on this Plan that they vote to accept this Plan.

Respectfully submitted on this 1st day of October, 2024.

HOMETOWN LENDERS, INC.

By: <u>*/s/ William E. Taylor Jr.*</u>
        William E. Taylor Jr.
Its: President

<u>*/s/ Kevin D. Heard*</u>
Kevin D. Heard

<u>*/s/ Angela S. Ary*</u>
Angela S. Ary

<u>Of Counsel</u>:
HEARD, ARY & DAURO, LLC
303 Williams Avenue, Suite 921
Huntsville, Alabama 35801
Tel: 256-535-0817
Fax: 256-535-0818
kheard@heardlaw.com
aary@heardlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of October, 2024, I served a copy of the foregoing **Chapter 11 Plan Dated October 1, 2024**, on (i) the Office of the Bankruptcy Administrator, (ii) the Debtors' 40 largest unsecured creditors, (iii) all counsel of record requesting notice, (iv) the Internal Revenue Service, (v) all secured creditors, (vi) any governmental agencies that request special notice, (vii) all parties having filed a proof of claim in this case, (viii) all those parties listed on the Clerk's matrix, and (ix) all other persons requesting notice, by depositing the same in the United States Mail, postage prepaid and properly-addressed, and/or via electronic mail at the previously-provided e-mail address, unless the party was served as a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, whereby service was made on the date of issuance by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**Notice to be served via CM/ECF electronic notice to:**

Richard Blythe obo Bankruptcy Administrator Richard_Blythe@alnba.uscourts.gov, courtmaildec@alnba.uscourts.gov
Richard E O'Neal obo the IRS USAALN.BANKRUPTCY@usdoj.gov
Stuart M Maples obo William Taylor, Jr., and Pegrum Creek, LLC smaples@thompsonburton.com , kpickett@thompsonburton.com ; smarks@thompsonburton.com
William Marcus Brakefield obo SmartBank   BANKRUPTCY@hsmbb.com; bankruptcy@hubbardfirm.com
Matthew M Cahill obo First Horizon Bank mcahill@bakerdonelson.com, mcleveland@bakerdonelson.com; dbivins@bakerdonelson.com
Edward Franklin Childress, Jr. obo First Horizon Bank fchildress@bakerdonelson.com
Chloe Champion obo IMI Huntsville, LLC   cchampion@burr.com, sgoolsby@burr.com
Heather A Jamison obo IMI Huntsville LLC hjamison@burr.com, sgoolsby@burr.com
Kent D McPhail obo Federal Home Loan Mortgage Corporation bankruptcynotices@mslawyers.law, KentMcPhailAssociatesLLC@jubileebk.net
Andrew J Shaver obo Tony Perri Sr. & Jr. ashaver@bradley.com, ashaver@ecf.courtdrive.com
Robert J Solomon obo First Horizon Bank rsolomon@sb-law.com, efc-sblaw@sb-law.com;mflower@sb-law.com
Bill D Bensinger obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson bdb@csattorneys.com , bill-bensinger-5829@ecf.pacerpro.com
Richard E Smith obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson resmith@csattorneys.com
Daniel D Sparks obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson ddsparks@csattorneys.com
Thomas B Humphries obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson tbhumphries@csattorneys.com
Andrew Pete Cicero, III obo FirstBank acicero@burr.com , mgunnells@burr.com
William M Hancock obo Bank of Frankewing bankruptcy@wolfejones.com , wmhancock@wolfejones.com
Jesse S Vogtle, Jr obo Stanbery Columbia jesse.vogtle@hklaw.com , brooke.freeman@hklaw.com
William Wesley Causby obo Colleen Wood wcausby@memorylegal.com
Travis Johns obo Shawn A Miller travis@travisjohns.law
Colin T. Dean obo Planet Home Lending cdean@mcglinchey.com, epowell@babc.com
Alison L. Archer obo Ohio Attorney General alison.archer@ohioago.gov

**Notice to be served via the e-mail address provided in proof of claim/request for service:**
**See, attached email list.**

**Notice to be served via U.S. Mail:**
Chris Echols, CPA
3sixty Consulting Group, LLC
4513 Allen Hollow Place
Suwanee, GA 30024

NJ Dept of Labor, Div Employer Accounts
Attn: Randall Perry - Senior Tax Examnr
P O Box 379
Trenton, NJ 08625-0379

**All remaining parties on the attached matrix.**

*/s/ Kevin D. Heard*
Kevin D. Heard