## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | CASE NO.: 24-81038-CRJ11 |
| HOMETOWN LENDERS, INC. | ) | |
| EIN: XX-XXX6790 | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |

### DISCLOSURE STATEMENT OF HOMETOWN LENDERS, INC.
### DATED OCTOBER 1, 2024

### PRELIMINARY STATEMENT

THIS DISCLOSURE STATEMENT RELATES TO THE CHAPTER 11 PLAN OF HOMETOWN LENDERS, INC. DATED OCTOBER 1, 2024 ("PLAN"), AND HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE. THE PLAN PROVIDES FOR THE LIQUIDATION OF THE ASSETS OF THE DEBTOR AND THE DISTRIBUTIONS TO ITS CREDITORS IN THIS CHAPTER 11 CASE.

NO PERSON MAY GIVE ANY INFORMATION ON BEHALF OF THE DEBTOR REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN, OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS DESIGNED TO PROVIDE ADEQUATE INFORMATION TO ENABLE HOLDERS OF CLAIMS AGAINST THE DEBTOR TO MAKE AN INFORMED JUDGMENT ON WHETHER TO ACCEPT OR REJECT THE PLAN. ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, EXHIBITS ANNEXED HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT PRIOR TO THE END OF THE SOLICITATION PERIOD FOR THE PLAN.  NO MATERIALS OTHER THAN THE ACCOMPANYING MATERIALS ATTACHED HERETO OR REFERENCED HEREIN HAVE BEEN APPROVED BY THE BANKRUPTCY COURT OR THE DEBTOR FOR USE IN SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT: (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN REMAIN MATERIALLY ACCURATE, AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), OR ANY SIMILAR PUBLIC GOVERNMENTAL OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT, THE INFORMATION CONTAINED HEREIN, OR THE MERITS OF THE PLAN. ADDITIONALLY, THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION".

YOU SHOULD NOT CONSTRUE THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. YOU SHOULD, THEREFORE, CONSULT WITH YOUR OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS IN CONNECTION WITH THE AMENDED PLAN, THE SOLICITATION OF VOTES ON THE AMENDED PLAN AND THE TRANSACTIONS CONTEMPLATED BY THE PLAN

ALL CAPITALIZED TERMS AND PHRASES USED IN THIS DISCLOSURE STATEMENT AND NOT OTHERWISE DEFINED HEREIN WILL HAVE THE MEANINGS ASCRIBED TO THEM IN THE PLAN.

# I.
# INTRODUCTION

Hometown Lenders, Inc., debtor and debtor-in-possession ("Debtor"), filed a voluntary petition under Chapter 11 of Title 11, United States Code ("Bankruptcy Code" or "Code"), on June 3, 2024, in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division ("Bankruptcy Court" or "Court"). Debtor submits this Disclosure Statement dated October 1, 2024 ("Disclosure Statement"), in connection with its Chapter 11 Plan dated October 1, 2024 ("Plan"), as required by 11 U.S.C. § 1125 of the Bankruptcy Code. The definitions in the Plan are incorporated by reference. The Debtor is distributing this Disclosure Statement, pursuant to §1125 of the Bankruptcy Code, to provide the Debtor's creditors with adequate information so that they can make an informed judgment on whether to accept or reject the Plan.

A.  Explanation of Chapter 11.

Pursuant to chapter 11 of the Bankruptcy Code, a debtor may reorganize or wind up its affairs for its benefit and the benefit of its creditors. In a chapter 11 case, the debtor typically remains in control of the estate as the "debtor in possession." Upon filing a petition for chapter 11 relief and during the pendency of a case, the Bankruptcy Code imposes an automatic stay against creditors' attempts to collect or enforce, through litigation or otherwise, claims against the debtor. The automatic stay provisions of section 362 of the Bankruptcy Code, unless modified by court order, will generally prohibit or restrict attempts by creditors to collect or enforce any claims that arose prior to the commencement of the chapter 11 case against the debtor.

The provisions of the Bankruptcy Code are designed to encourage the parties-in-interest in a chapter 11 proceeding to negotiate the terms of a plan of reorganization or liquidation so that

it may be confirmed. A chapter 11 plan is the vehicle for satisfying or otherwise addressing the claims against and interests in a debtor. After the chapter 11 plan has been filed, the holders of claims against and/or interests in a debtor, whose claims or interests are <u>impaired</u> under the plan, may vote to accept or reject the plan. Section 1125 of the Bankruptcy Code requires a debtor, before soliciting acceptances of the proposed plan, to prepare a disclosure statement containing adequate information of such kind, and in such detail, as to enable a hypothetical reasonable investor to make an informed judgment about the plan.

B.      <u>Preliminary Statement and Summary of Recoveries.</u>

Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor continues in the management and possession of its property as debtor in possession; no trustee or examiner has been appointed for the Debtor.

The primary objective of the Debtor's Plan is to provide a mechanism for the liquidation of the Debtor's assets, including causes of action, if any, held by, or in favor of, the Debtor, reconciling and fixing the claims asserted against the Debtor and distributing the net liquidation proceeds in conformity with the distribution scheme provided by the Bankruptcy Code. Since the Plan is one of liquidation, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive a discharge, and will not engage in business after a Final Decree has been entered and its chapter 11 case is closed. All equity interests in the Debtor will be canceled and the equity interest holder will not receive a distribution under the Plan.

The table below summarizes the treatment for creditors of under the Plan. For a complete explanation of the classes, please refer to the discussion in Article IV, Section B of this Disclosure Statement, entitled "Summary of Classification and Treatment of Claims Under the Plan" and to the Plan itself.

| Classification | Type of Claim or Equity | Treatment | Est. Recovery | Impaired | Voting |
|---|---|---|---|---|---|
| None | Administrative Expense | All Administrative Expense Claims (Other than Professional Fees) must be paid by application filed with the Bankruptcy Court no later t**han 30 days after the Effective Date of the Plan.** Debtor shall have 30 days to Object to said claim after it has been filed. | 100% | N/A | No |
| None | Professional Fee Claims | All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court no later than sixty (60) days after the Effective Date. Any party in interest shall have the right to object to a Professional Fee Claim. Objections to Professional Fee Claims shall be filed within fourteen (14) days from the filing | 100% | N/A | No |

| | | | | | |
|---|---|---|---|---|---|
| | | and service of the Professional Fee Claim. | | | |
| None | Bankruptcy Administrator Fees | All fees payable in the Cases under 28 U.S.C. §1930, as agreed by the Debtors or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtors as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Case | 100% | N/A | No |
| None | Priority Tax Claims | Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, the Debtors shall pay to each holder of an Allowed Priority Tax Claim, if any, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Priority Tax Claim is Allowed. | 100% | NA | No |
| Class 1 | Secured Claims | Class 1 consists of the secured claims of creditors shown on Schedule 3. Class 1 is impaired under the Plan. The holders of Class 1 Claims are entitled to vote on the Plan. Each Class 1 Allowed Claim shall be paid pursuant to the terms of the Plan. | Unknown | Yes | Yes |
| Class 2 | Priority Non-Tax Claims | Class 2 consists of the Priority Non Tax Claim on Schedule 4.  Except to the extent that a holder of an Allowed Claim in this class agrees to a different treatment, on the later of the Effective Date, or as soon as is reasonably practicable after such Allowed Priority Non-Tax Claim is Allowed, each holder of an Allowed Class 2 Claim shall receive payment of one hundred percent (100%) of the Allowed amount of such Class 2 Claim after all Allowed Claims after all unclassified claims under the Plan are paid in full or otherwise treated as provided for under the Plan. | Uknown | Yes | Yes |

| Class 3 | General Unsecured Claims | On the later of the Effective Date, or as soon as is reasonably practicable afterall Allowed General Unsecured Claims are Allowed or Disallowed, the holders of Allowed General Unsecured Claims shall receive their Pro Rata Share of all remaining distributions under the Plan, if any, after all Allowed Unclassifed Claims and Allowed Claims in Classes 1 and 2 are paid in full or otherwise treated as provided for under the Plan. | Uknown | yes | yes |
| Class 4 | Equity Interest | Equity Interest Holder shall recieve on account of its interests in the debtor a distribution, if any, after all Allowed Claims in Classes 1-3 are paid in full or otherwise satisfied as provided for in the Plan.    The Debtor does not expect that a distribution will be made to the Equity Interest holder. | none | yes | yes |

## C.    Who is Entitled to Vote on the Plan.

All classes that are impaired are entitled to vote on the Plan. Pursuant to the Bankruptcy Code, only classes of claims against or interests of a debtor that are "impaired" (within the meaning of section 1124 of the Bankruptcy Code) under the terms and provisions of a plan of liquidation are entitled to vote to accept or reject a plan.   A class is "impaired" if the legal, equitable, or contractual rights attaching to the claims or interests of that class are modified, other than by curing defaults and reinstating maturity.   Classes of claims and interests that are not impaired are not entitled to vote on a plan and, under section 1126(f) of the Bankruptcy Code, are conclusively presumed to have accepted a plan.   All classes of claims and interests in this Plan are impaired and entitled to vote.

## D.    Definitions; Exhibit.

Unless otherwise defined herein, capitalized terms used in this Disclosure Statement will be defined as set forth in the Plan or as defined in the Bankruptcy Code.

A copy of a liquidation analysis is attached hereto as Schedule 1.   The Debtor has also attached hereto as Schedule 2 an analysis of 1) the list of unsecured claims filed with the Bankruptcy Court; and 2) unfiled claims listed on Debtor's schedules.

## E.    Notice to Creditors.

1.    *Purpose of Disclosure Statement*.   This Disclosure Statement is being transmitted to holders of Claims in Classes 1, 2, 3 and 4, whether or not they have filed proofs of claim, and to interested parties, who have filed a notice with the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors with information that (i) summarizes the Plan and alternatives to the Plan, (ii) advises creditors of their rights under the Plan, (iii) assists creditors entitled to vote in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

This Disclosure Statement contains important information regarding (A) the Debtor's history, (B) developments in this chapter 11 case, (C) the Plan, including a summary and analysis thereof, and (D) considerations pertinent to acceptance or rejection of the Plan. All creditors are encouraged to read this Disclosure Statement and its exhibits carefully and in their entirety before deciding to vote either to accept or reject the Plan.

2.    *Information Contained in this Disclosure Statement*.   This Disclosure Statement is the only document authorized by the Bankruptcy Court to be used in connection with the solicitation of votes accepting the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no Person has been authorized by the Bankruptcy Court or the Debtor to use or disclose any information concerning the Debtor other than the information contained herein.   Other than as explicitly set forth in this Disclosure Statement, you should not rely upon any information relating to the Debtor, its estate, the value of its assets, the nature or amounts of its liabilities, its creditor's Claims, or the amount or value of any distributions made under the Plan.   All financial and historical information contained in this Disclosure Statement has been provided by the Debtor.   This Disclosure Statement is accurate to the best of the Debtor's knowledge, information and belief.   The Debtor has endeavored to make this Disclosure Statement as clear and comprehensive as possible in order to furnish creditors with adequate information to make an informed decision regarding acceptance or rejection of the Plan.

**PLEASE READ THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN, IN ITS ENTIRETY.   THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, FOR THE CONVENIENCE OF CREDITORS, BUT THE PLAN ITSELF QUALIFIES ALL SUCH SUMMARIES. ACCORDINGLY, IF THERE EXISTS ANY INCONSISTENCY BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN WILL CONTROL.**

3.    *Hearing on Confirmation of Plan*.   The Bankruptcy Court will schedule a hearing to consider confirmation (*i.e.*, approval) of the Plan.   Notice of that hearing will be provided by U.S. Mail.   The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in the Bankruptcy Court on the scheduled hearing date or upon the Debtor filing a notice of adjournment.

**II.**
**INFORMATION ABOUT THE DEBTOR**

A.    <u>General</u>.

Debtor, Hometown Lenders, Inc. is a corporation organized and existing under the laws of the State of Alabama. Its corporate headquarters was located in Huntsville, Alabama.   It was

originally organized as a limited liability company in 2000. The sole shareholder of the Debtor is William "Billy" Taylor Jr.

B.      Business Activities – Summary of Debtor's Business Operations

Prior to 2012, the Debtor was engaged in the business of a mortgage broker.   Commencing in 2012, the Debtor became an independent mortgage banker and quickly became the largest mortgage banker in Alabama. As of 2017, the Debtor was primarily engaged in the business of originating and selling residential mortgage loans through its retail origination channel.   In 2018, it expanded its business nationwide; and, by 2021, it had over 1,400 employees and 120 offices in 46 states.

As an independent mortgage banker, the Debtor's principal business was to facilitate the purchase of residential real properties by extending mortgages to qualified buyers which were then subsequently sold to industry investors such as Fannie Mae and Freddie Mac.   Over 95 percent of the Debtor's loans were originated, funded, closed, and warehoused in its name.

Because the Debtor's business was capital intensive, it required the Debtor to establish lines of credit with various lenders, known as warehouse lenders, to fund in the origination of residential mortgages. Debtor's primary warehouse lenders were Flagstar Bank, N.A. and First Horizon Bank, but it also had credit lines with the Georgia Banking Corporation, Norpointe Bank, and South States.   The agreements with the warehouse lenders were structured either as repurchase facilities or secured loan facilities.   Each warehouse lender provided the Debtor with a line of credit which it used to originate and fund residential mortgage loans.

These loans were secured by certain collateral, including the mortgage loans which were originated utilizing the lines of credit.   For instance, with regard to First Horizon, the Debtor entered into a lending relationship in 2018 and established a $30 million line of credit. This loan was subsequently modified and renewed on several occasions the latest being on June 16, 2023, when Debor obtained line of credit from First Horizon in the amount of $45 million, which is evidenced by a Master Promissory Note and Amendment to Mortgage Warehouse Loan and Security Agreement.

Debtor had a similar financing agreement with Flagstar.   On or about November 24, 2020, Flagstar and the Debtor entered into a mortgage warehousing loan and security agreement whereby Flagstar loaned funds to the Debtor so that it could originate and fund certain residential mortgage loans.   Pursuant to this agreement, Debtor established a $60 million revolving line of credit which it utilized in its business operations.

Typically, these loans were either sold to or guaranteed by an entity such as Fannie Mae or Freddie Mac. Once they were sold the proceeds were applied against the line of credit.   For instance, the Debtor believes that once the mortgages which secured the lines at both First Horizon and Flagstar were sold, no amounts remained drawn on the lines.   In fact, the Debtor should have a surplus of funds at these banks.

C.      Events Leading to Bankruptcy.

Similar to all mortgage originators, the Debtor was subject to certain economic and

regulatory risks in originating mortgage loans. For instance, the Debtor was subject to an interest rate risk such that in a rising interest rate environment, it experienced a decrease in loan production, as well as decreases in the value of mortgage loans held for sale that were not committed to buyers, all of which negatively impacted the Debtor's operations. The Debtor was also subject to the risk that if the loan pays off within a specified time frame, it will be required to refund to the lender or investor a portion of the sale proceeds.

Commencing in 2022, after years of historically low interest rates, mortgage rates in the United States began to increase as a result of the Federal Reserve's policy to curb inflation. For instance, mortgage rates increased from an average of 3.2% in January 2022 to 7.2% in May 2024. As a result of these significantly higher rates, the Debtor's top-line revenues declined by over 70%. This drop in revenue was caused by a decrease in loan production which in turn was caused by higher interest rates eliminating potential home buyers from the market and investors who were not willing to purchase the mortgages based on the belief that interest rates would soon decline and the homeowner would then refinance out of the higher rate mortgage.

For example, in first quarter of 2022, the Debtor was closing approximately 1,500 loans per month. However, in June 2023, it was closing less than 100 per month. In addition to the drop in its top-line revenue, the Debtor was required to repurchase significantly more mortgages as a result of investors being unwilling or unable to purchase those mortgages at the prevailing rate.

As these unforeseen events continued to unfold in 2023, the Debtor began a systematic process of cost cutting to reduce its overhead. This included closing a significant number of its offices nationwide and laying off a number of its employees. This systematic process continued such that, by the end of June 2023, the Debtor had fewer than 40 offices and less than 400 employees.

Despite making these cuts, however, the Debtor was unable to overcome the unforeseen adverse market conditions in the mortgage lending industry. As a result of these challenges, it was forced to cease all business operations and terminate its remaining employees as of October 13, 2023.

**III.**
**ACTIVITIES WITHIN THE CHAPTER 11 CASE**

A.    Filing.

On June 3, 2024, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition Date"). At the time Debtor filed for bankruptcy, it also filed a listing of its 40 largest unsecured claims. [Doc. 3]. The Debtor also filed a motion for entry of an order extending the time to file schedules of assets and liabilities and statement of financial affairs on June 3, 2024. [Doc. 10]. The Court granted this motion in its Order dated June 7, 2024 which extended the time period for the Debtor to file its schedules until on or before July 5, 2024 [Doc. 35]. The Debtor filed its schedules of assets and liabilities and statement of financial affairs with the Court on July 3, 2024. [Docs. 57-59].

B.      Administration of the Case.

After the Petition Date, and in accordance with sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continued to be in possession of its assets.   As of the date of this Disclosure Statement, no trustee or examiner has been appointed in the chapter 11 cases, nor has any motion for a trustee or examiner been made.

The Chapter 11 Operating Procedures filed June 6, 2024 [Doc. 27], were made effective on June 15, 2024, by Order of the Court dated June 7, 2024 [Doc.32].

In conjunction with the filing of this case, the Debtor also filed several "first day" motions. Those motions included a Motion for Order Establishing Noticing Procedures [Doc. 8]. The Court entered an interim order granting this Motion on June 7, 2024 [Doc. 36], and a final order Establishing Limited Notice Procedures on July 8, 2024 [Doc. 63].   The Debtor also filed a motion to approve procedures for payment of interim compensation of professionals [Doc. 9] which the Court granted on an interim basis on June 7, 2024 [Doc. 34].

C.      Retention of Professionals.

1.      *Bankruptcy Counsel*.   On June 7, 2024, the Debtor received authorization to retain Kevin Heard and Angela Ary of Heard, Ary & Dauro, LLC as counsel to the Debtor [Doc. 33]. On July 8, 2024 the Court entered a final Order Approving Application to Employ Heard Ary & Dauro, LLC as counsel for the Debtor. [Doc. 64].

2.      *Accountant*.   On September 17, 2024, the Debtor filed an Application to Employ Chris Echols, CPA of 3sixty Consulting Group, LLC as an accountant to assist the Debtor in preparing and filing outstanding tax returns [Doc. 99]. The Court has not yet ruled on this application. Debtor needs to employ an accountant to assist in the preparation of and filing of tax returns with state and federal taxing authorities.   In this regard, Debtor expects that once it is able to file its tax returns, many of the tax claims will be substantially reduced or eliminated. Moreover, the filing of the Debtor's corporate tax returns with the IRS is essential to it being able to ultimately receive the ERTC credit which it is entitled to received from the IRS and which is a major funding source for the Debtor's proposed Plan.

D.      Post-Petition Actions.

1.      *Non-Qualified Deferred Compensation Plan Adversary*.   Pre-petition, the Debtor established The Hometown Lenders, Inc. Deferred Compensation Plan, a Non-qualified Deferred Compensation Plan (the "NQDC Plan"). The purpose of the NQDC Plan was to provide a means by which a select group of employees could elect to defer a portion of their compensation ("Participants").   Section 10 of the NQDC Plan created a contractual obligation of the Debtor to these Participants to make payment to them from its general funds.   To fund its obligations under the NQDC Plan, the Debtor purchased corporately owned life insurance policies through the Principal Life Insurance Company.   Each employee for which the Debtor purchased a life insurance policy consented to the Debtor obtaining such a policy by signing a "Consents for Employer to Purchase Individual Life Insurance".

On June 17, 2024, the Debtor filed an adversary complaint against Principal Life Insurance Company and a number of former employees seeking, among other relief, a declaration that it owned certain life insurance policies which it used to finance its obligations under the NQDC Plan. AP No. 24-80065. The Debtor maintains that because it owns these life insurance policies, it is entitled to recover the cash value of the polices which as of June 26, 2024, the cash value of these insurance policies was approximately $856,516.17 ("Cash Value").

Post-petition, and subject to the approval from the Bankruptcy Court, the Debtor reached an agreement with Principal Life regarding the surrender of these insurance policies and the turnover of the Cash Value to the Debtor. Objections to this settlement were made by Kenneth Wilson, Conrad Thompson and Anthony E. Perri, Sr and Anthoy E. Perri, Jr. These Participants dispute that the Debtor is entitled to the Cash Value of the life insurance polices and claim an interest in the Cash Value based on their participation in the NQDC. The Court has not ruled on Debtor's Motion Pursuant to Bankruptcy Rule 9019 for Approval of Settlement [AP Doc. 40] which scheduled for hearing on October 23, 2024.

2. *Flagstar Bank Settlement*. As discussed above, pre-petition the Debtor established lines of credit with various lenders, including Flagstar Bank N.A. In November 2020, the Debtor and Flagstar entered into a Mortgage Warehousing Loan and Security Agreement ("Loan Agreement") whereby Flagstar agreed to loan the Debtor money in order for it to originate and fund certain residential mortgage loans. On August 25, 2023, Flagstar notified the Debtor of an Event of Default under the Loan Agreement based, in part, upon the Debtor's failure to make timely payments on the debt owed to Flagstar under the Loan Agreement. Thereafter, on October 25, 2023, Flagstar notified the Debtor of a continuing Event of Default and accelerated the balance due on the Loan Agreement in the amount of $20,110,657. Then, on November 10, 2023, Flagstar brought suit against the Debtor and William E Taylor Jr. in the United States District Court for the Eastern District of Michigan in the matter styled *Flagstar Bank NA vs. Hometown Lenders Inc. and William E. Taylor Jr.* Case No. 23-cv-12858 ("Lawsuit") seeking, among other relief, to foreclose upon its liens and recover payment on the debt owed to it.

Subject to the approval of this Court, the Debtor has reached an agreement with Flagstar (the "Agreement") to resolve the claims asserted by Flagstar in the Lawsuit and those related to this Bankruptcy Case. The Settlement between Flagstar and the Debtor, authorizes Flagstar to deduct the sum of $351,738.80, from existing collateral accounts, in full satisfaction of its claims and further requires Flagstar to pay to the Debtor the remaining balance in the Collateral Accounts of approximately $269,857.99, which is net of the Debtor's remaining Obligations owed to Flagstar under the Loan Agreement (hereinafter the "Settlement Amount"). Additionally, Flagstar will release and re-assign to the Debtor certain mortgages that also formed part of the Collateral and will release and discharge any remaining lien(s) it may have upon any property or collateral described in the Loan Agreement. Furthermore, the Debtor and Flagstar shall mutually release one another from any further claims and Flagstar will not receive a distribution in the Debtor's chapter 11 case. The Settlement Amount shall be held in the Debtor's DIP bank account at Regions Bank, subject to further Orders from the Court. The Bankruptcy Court approved the settlement between Flagstar and the Debtor on September 25, 2024.

3. *Cash Collateral Motion*. On September 12, 2024, Debtor filed a Motion with the Court seeking authority for use of Cash Collateral in regards to the Debtor's use of cash collateral

of the Internal Revenue Service and the Alabama Department of Revenue [Doc. 91]. That Motion is pending and is scheduled to be heard on November 6, 2024.

E.     Executory Contracts and Unexpired Leases.

*Assumption of Contracts and Leases*. Pre-petition the Debtor was a party to multiple leases and executory contracts listed on Schedule G of its bankruptcy schedules. Most of these leases related to the Debtor's lease of commercial space where it previously maintained offices. Those landlords have all taken possession of those properties before the Debtor filed for bankruptcy. To the extent there remains any executory contract or unexpired lease to which the Debtor is a party, the Debtor rejects those executory contracts or unexpired leases pursuant to §365 of the Bankruptcy Code upon confirmation of this Plan. All parties to any executory contract or lease rejected shall have thirty (30) days from the Confirmation Date in which to file a claim for damages, if any, resulting from such rejection or such claims will be disallowed and will not be eligible to participate in distributions under this Plan.

F.     Bar Date For Filing Proofs of Claims.

The Debtor filed its Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs on July 3, 2024. By an Order dated July 8, 2024 [Doc. 65] (the "Bar Date Order"), the Bankruptcy Court fixed **September 2, 2024**, as the date by which proofs of claims for prepetition claims had to be filed against the Debtor. Under the Bar Date Order and the Plan, unless otherwise ordered by the Bankruptcy Court, any person or entity that was required to file a timely proof of claim and failed to do so on or before the Bar Date will not be entitled with respect to such claim to receive any payment or distribution of property from the Debtor, its successors or assigns, and will be forever barred from asserting such Claims against the Debtor's Estate.

G.     Avoidance Actions.

The Debtor will be conducting an analysis of potential avoidance actions that are available to the Debtor under the Bankruptcy Code or otherwise. Where appropriate, the Debtor, will commence actions to recover avoidable pre-petition transfers (or achieve potential Claim reductions under section 502(d) of the Bankruptcy Code).

**IV.**
**SUMMARY OF THE PLAN**

THE FOLLOWING DISCUSSION OF THE PLAN CONSTITUTES A SUMMARY ONLY AND IS QUALIFIED IN ITS ENTIRETY BY THE TERMS OF THE PLAN ITSELF. YOU SHOULD READ THE PLAN BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. CHANGES MAY BE MADE TO THE PLAN. ANY SUCH CHANGES MADE TO THE PLAN WILL BE DESCRIBED AT THE CONFIRMATION HEARING.

If the Plan is confirmed by the Bankruptcy Court and is then consummated as is set forth below, holders of Claims will receive the distributions described below. Upon the Effective Date, the treatment of each class of Claims under the Plan will be binding upon the Debtor, the all holders

of Claims, and all Persons whether or not such Persons are to receive any payments or other distributions under the Plan and whether or not such Persons have voted to accept the Plan.

A.    Overview of the Plan.

The Plan will be funded primarily from the net proceeds from the settlement proceeds of both Flagstar and Principal Life as well as the Debtor's anticipated ERTC recovery. The Plan provides  for distributions on account of secured claims, unsecured claims (including claims arising from the rejection of leases or contracts), priority claims and administrative claims, in priority of payment set forth under the Bankruptcy Code, and, in the event that funds were to remain after payment of all Allowed Claims in full, which is unexpected, any such remaining funds would be distributed to holders of Interests.

B.    Summary of Classification and Treatment of Claims Under the Plan.

Claims are divided into five Classes under the Plan, and the proposed treatment of Claims varies among Classes.   Administrative Claims are not classified.   The Plan contains five Classes of impaired Claims, which consist of Secured Claims, Priority Claims, and General Unsecured Claims.   Additionally, the Equity Interest Holder in Class 5 is also impaired.

The following section briefly summarizes the classification and treatment of Claims under the Plan.

**1.    Unclassified Claims**

(a)    *General*.   Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against the Debtor are not classified for purposes of voting on, or receiving distributions under, the Plan, and the holders of such unclassified Claims are thus not entitled to vote to accept or reject the Plan. All such Claims are instead treated separately in accordance with Article IV of the Plan and the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

(b)    *Administrative Claims*.   An Administrative Claim is defined in the Plan and means any Claim under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) the actual, necessary costs and expenses incurred by the Debtor after the Petition Date of preserving the Estate or operating the business of the Debtor, (b) Professional Fee Claims, (c) Bankruptcy Court Fees, and (d) any Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court.

(i)    The Debtor estimates that the amount of accrued but unpaid Administrative Claims will be in the range of approximately $10,000 (excluding Professional Fee Claims). This amount is subject to change as no Bar Date for Administrative Claims has been established.   The holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Allowed amount of such Administrative Claim or (b) such other less favorable treatment as to which the Debtor and such holder shall have agreed upon in writing.

(ii)    <u>Professional Fee Claims</u>. All final requests for payment of Professional Fee Claims must be made by application filed with the Bankruptcy Court no later than sixty (60) days after the Effective Date. Any party in interest shall have the right to object to a Professional Fee Claim. Objections to Professional Fee Claims shall be filed within fourteen (14) days from the filing and service of the Professional Fee Claim.  Except to the extent the holder of an Allowed Administrative Claim for Professional Fees agrees, each holder of an Allowed Administrative Claim for Professional Fees will be paid in full as of the Effective Date or the date such Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is practicable.

(iii)    <u>Fees Under 28 U.S.C. §1930</u>. All fees payable in the case under 28 U.S.C. §1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Debtor as required under 28 U.S.C. §1930 until such time as an order is entered by the Bankruptcy Court closing the Case.

(iv)    <u>Estimation of Administrative Claims</u>.  The Debtor reserves the right, for purposes of allowance and distribution, to seek to estimate any unliquidated Administrative Claim, if the fixing or liquidation of such Administrative Claim would unduly delay the administration of and distributions under the Plan.

(v)    <u>Administrative Bar Date</u>.  All Administrative Claims not filed by any applicable Administrative Claim Bar Date for the filing of such Claims shall be deemed waived.  The Administrative Claim Bar Date for all holders of Administrative Claims, except those of Professionals and for Bankruptcy Court Fees, shall be as provided in the Confirmation Order.  Debtor intends on proposing the following Administrative:  All Administrative Expense Claims (Other than Professional Fees) must be paid by application filed with the Bankruptcy Court <u>no later than 30 days after the Effective Date of the Plan. Debtor shall have 30 days to Object to said claim after it has been filed.</u>

(c)    *Priority Tax Claims*:   Priority Tax Claims consist of any Allowed Priority Claims owed governmental units under §507(a)(8) of the Bankruptcy Code.   Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, Debtor shall pay to each holder of an Allowed Priority Tax Claim, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Priority Tax Claim is Allowed.

**2.    Classified Claims**

(a)    *Secured Claims*:

**Class 1.**    This Class consists of the Allowed Secured Claims shown on <u>Schedule 3</u>. Except to the extent the holder of an Allowed Secured Claim agrees, Debtor shall pay to each holder of an Allowed Secured Claim, an amount in Cash equal to the Allowed amount of such Claim as soon as is reasonably practicable after such Secured Claim is Allowed.

(b)    *Priority Non-Tax Claims*:

**Class 2.** Priority Non-Tax Claims consist of all Allowed Priority Claims for pre-petition wages, up to a maximum amount of $15,150 earned within the 180 days prior to the Petition Date or the date the Debtor ceased business, which ever occurred first, under §507(a)(4) of the Bankruptcy Code. These claims are impaired, and their treatment is predicated upon the acceptance by the Allowed Claims in this Class pursuant to §1129(a)(9)(B) of the Code. Holders of claims in this Class are shown on <u>Schedule 4</u>.

(c) *Non-priority Unsecured Claims*:

**Class 3.** This class consists of all allowed general unsecured claims which are impaired. The total amount of unsecured claims exceeds $52,891,864. The claims are of every kind and nature including claims arising from corporate guarantees, the rejection of executory contracts, unexpired lease claims, deficiencies on secured claims, contract damage claims or open account claims and damages arising from all obligations including, but not limited to, all liquidated, contingent and unliquidated claims relating to any liability asserted against the Debtor based on any theory of liability whether on contract, tort, or equity. It also includes any debt which is filed as a priority or secured claim but, which is allowed as an unsecured claim by the Bankruptcy Court. Holders of general unsecured claims without priority which are Allowed Claim shall be paid a pro rata distribution from the Liquidation Fund (Liquidation Fund to be established). No Holders of Allowed General Unsecured Claims shall be entitled to receive post-petition interest on its Allowed Claim.

(d) *Equity Interest Holder*:

**Class 4.** This Class consists of the equity interest of William E. Taylor Jr. ("Taylor"), who owns all of the issued and outstanding membership interests in the Debtor. The claim of Taylor as the equity interest holder is impaired. Taylor's outstanding equity in the Debtor is to be cancelled, and Taylor will not receive any distribution under the terms of this Plan.

C. <u>Implementation of Plan</u>.

1. *Implementation*. The Plan will be implemented by the Debtor in a manner consistent with the terms and conditions set forth in the Plan and in the Confirmation Order. The primary sources for funding the Plan are as follows (hereinafter "Liquidation Fund"):

(a) <u>Flagstar</u>

(i) The Settlement Proceeds with Flagstar Bank in the approximate amount of $269,857.99;

(ii) The Sale Proceeds from the Mortgages owned by the Debtor. As discussed above, Flagstar is assigning and transferring to the Debtor 49 home mortgages which it held as additional collateral for its loan. It is expected that some of these mortgages will be paid off due to the drop in interest rates as a result of the Federal Reserve cutting the federal funds rate which acts as a benchmark for home mortgage rates. The Debtor expects to sell the remaining mortgages pursuant to a motion filed with the Court pursuant to §363 of the Bankruptcy Code.

The total value of these mortgages is presently unknown and varies based on market forces such as interest rates. The Debtor will sell these mortgages by using a bid process to ensure the highest price. Debtor will solicit bids to purchase these mortgages from industry buyers however, the Debtor does not have a formal offer to purchase the mortgages at this time. Subject to the Court's approval, Debtor anticipates initial shall be subject to higher and better offers from potential buyers   subject to a final subject to a final opportunity to submit a "best and final" offer.

Without limitation, each bid must provide that (i) the purchase price shall be "all cash" payable at the closing and (ii) the bidder's obligation to close shall not be conditioned upon obtaining acquisition financing, the completion of any additional due diligence or any other contingency, other than the approval by the Bankruptcy Court.

(b) <u>Cash Value of Life Insurance Policies</u>

(i) As discussed above, the Debtor has reached an agreement with Principal Life regarding the surrender of certain life insurance policies and the turnover of the Cash Value to the Debtor.   These policies were purchased by the Debtor to fund its obligations owed to plan participants under its NQDC Plan and the Debtor owns these policies.   As of June 26, 2024, the cash value of these insurance policies was approximately $856,516.17 ("Cash Value").

(c) <u>ERTC Claim</u>

(i) Debtor will also fund all obligations under this Plan using the proceeds from an Employee Retention Credit ("ERTC") in the approximate amount of $22,000,000.

D. <u>Distributions to Holders of Claims</u>.

1. *Estimation of Claims*.   The Debtor may, at any time, request that the Bankruptcy Court estimate any Claim not expressly Allowed by the terms of the Plan and otherwise subject to estimation under section 502(c) of the Bankruptcy Code and for which the Debtor may be liable under the Plan to the extent permitted by section 502(c) of the Bankruptcy Code, regardless of whether any party-in-interest previously objected to such Claim; and the Bankruptcy Court will retain jurisdiction to estimate any Claim pursuant to section 502(c) of the Bankruptcy Code at any time prior to the time that such Claim becomes an Allowed Claim.   In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated by the Bankruptcy Court and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

2. *No Recourse*.   Notwithstanding that the allowed amount of any particular disputed claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders

of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor or the Estate or any of their respective professionals, consultants, officers, directors or members or their successors or assigns, or any of their respective property.

3.    *Objections to Claims*.    Unless otherwise ordered by the Bankruptcy Court, on and after the Effective Date, Debtor shall have the exclusive right to make, file and prosecute objections to and settle, compromise or otherwise resolve disputed claims, except that as to applications for allowances of Professional Fee Claims, objections may be made in accordance with the applicable Bankruptcy Rules by parties-in-interest.    Subject to further extension by the Bankruptcy Court, the Debtor shall file and serve a copy of each objection upon the holder of the Claim to which an objection is made on or before the latest to occur of: (i) one hundred-twenty (120) days after the Effective Date, (ii) thirty (30) days after a request for payment or proof of claim is timely Filed and properly served upon the Debtor, or (iii) such other date as may be fixed by the Bankruptcy Court either before or after the expiration of such time periods.

E.    <u>Miscellaneous Distribution Provisions</u>.

1.    *Method of Cash Distributions*.    All Distributions of Cash pursuant to the Plan shall be made by the Debtor or a duly-appointed disbursing agent to the holders of Allowed Claims entitled to receive Cash under the Plan.    Cash payments made pursuant to the Plan shall be in United States dollars by checks drawn on a domestic bank selected by the Debtor or a duly appointed disbursing agent or by wire transfer from a domestic bank.

2.    *Accrual of Postpetition Interest*.    Unless otherwise provided for in the Plan or the Bankruptcy Code, no holder of a pre-petition Allowed Claim shall be entitled to the accrual of post-petition interest on account of such Claim.

3.    *No Distribution in Excess of Allowed Amount of Claim*.    Notwithstanding anything to the contrary herein or in the Plan, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim.

4.    *De Minimus Distributions*.    Notwithstanding anything to the contrary contained herein or in the Plan, if the amount of Cash to be distributed to the holder of an Allowed Claim is less than $25, the Debtor may hold the Cash Distributions to be made to such holder until the aggregate amount of Cash to be distributed to such holder is in an amount equal to or greater than $25, if the Debtor determines that the cost to distribute such Cash is unreasonable in relation to the amount of Cash to be distributed.    Notwithstanding the preceding sentence, if the amount of Cash Distribution to such holder never aggregates to more than $25, then on the final Distribution Date, the Debtor shall distribute such Cash to the holder entitled thereto.

5.    *Allocation of Payments*.    Amounts paid to holders of Allowed Claims in satisfaction thereof shall be allocated first to the principal amounts of such Claims, with any excess allocated to interest that has accrued on such Claims but remains unpaid.

6.    *Setoffs*.    The Debtor is authorized, pursuant to and to the extent permitted by section 553 of the Bankruptcy Code, to set off against any Allowed Claim and the Distributions to be made on account of such Allowed Claim, the claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim; provided that the Debtor gives

the holder of such Allowed Claim notice of the proposed setoff and the holder of such Allowed Claim does not object to the proposed setoff within thirty (30) days; provided that if an objection is timely raised to a proposed setoff, the Debtor may seek relief from the Bankruptcy Court to effectuate the setoff; provided, further, that neither the failure to effect such a setoff nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any such claims, rights and Causes of Action that the Debtor may possess against such holder.

7. *Unclaimed Property*. Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the Distribution Address unless the Debtor or the disbursing agent, as the case may be, have been notified in writing of a change of address. In the event that any Distribution to any holder of an Allowed Claim is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all eligible missed Distributions shall be made to such holder, without interest. All demands for undeliverable Distributions shall be made on or before one hundred and twenty (120) days after the date such undeliverable Distribution was initially made. Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Debtor and be treated as Available Cash. Any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against the Debtor and its property or the disbursing agent.

8. *Disputed Payments*. If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Debtor may, in lieu of making such Distribution to such Person, make such Distribution into an escrow account to be held in trust for the benefit of such holder and such Distribution shall not constitute property of the Debtor and its Estate. Such Distribution shall be held in escrow until the disposition thereof shall be determined by order of the Bankruptcy Court or other court of competent jurisdiction or by written agreement assigned by all of the interested parties to such dispute.

9. *Withholding Taxes*. In connection with the Plan, to the extent applicable, the Debtor shall comply with all withholding and reporting requirements imposed on it by federal, state and local taxing authorities, and all Distributions shall be subject to such withholding and reporting requirements.

10. *Resignation, Death or Removal of Death*. The Debtor may resign at any time upon not less than thirty (30) days' written notice to the Bankruptcy Administrator. The Debtor may be removed at any time by the Bankruptcy Administrator for cause upon application to the Bankruptcy Court on five (5) days' written notice to the Debtor and its counsel. In the event of the resignation, removal, death or incapacity of the Debtor, the Bankruptcy Administrator shall designate another Person to become a Disbursing Agent and thereupon the successor Disbursing Agent, without further act, shall become fully vested with all of the rights, powers, duties and obligations of his predecessor. No successor Disbursing Agent hereunder shall in any event have any liability or responsibility for the acts or omissions of any his predecessors.

11. *No Agency Relationship*. Neither the Debtor nor a Disbursing Agent shall be deemed to be the agent for any of the holders of Claims in connection with the funds held or distributed pursuant to the Plan. The Debtor, including its accountants and attorneys, shall not be liable for any mistake of fact or law or error of judgment or any act or omission of any kind unless

it constitutes gross negligence or willful misconduct or breach of fiduciary duty on the part of the such person or entity. The Debtor and its accountants and attorneys, shall be indemnified and held harmless, including the cost of defending such claims and attorneys' fees in seeking indemnification, by the Estate against any and all claims arising out of his duties under the Plan, except to the extent thier actions constitute gross negligence or willful misconduct or breach of fiduciary duty. The Debtor may conclusively rely, and shall be fully protected personally in acting upon any statement, instrument, opinion, report, notice, request, consent, order, or other instrument or document which he believes to be genuine and to have been signed or presented by the proper party or parties. The Debtor or any Disbursing Agent may rely upon information previously generated by the Debtor and such additional information provided to him by former employees of the Debtor.

12. *Continuing Existence*. From and after the Effective Date, the Debtor shall continue in existence for the purposes of (i) winding up its affairs as expeditiously as reasonably possible; (ii) liquidating, by conversion to Cash, or other methods, of any remaining Assets, as expeditiously as reasonably possible; (iii) enforcing and prosecuting claims, interests, rights and privileges of the Debtor, including, without limitation, the prosecution of Causes of Action; (iv) resolving disputed claims; (v) administering the Plan; (vi) making disbursements to Allowed Claim Holders; (vii) filing appropriate tax returns; and (viii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan.

13. *Closing of the Chapter 11 Case*. When all disputed claims filed against the Debtor have become Allowed Claims or have been Disallowed, and all Assets have been liquidated and converted into Cash (other than those Assets abandoned), and such Cash has been distributed in accordance with the Plan, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## V.
## EFFECT OF THE PLAN ON CLAIMS, INTERESTS AND CAUSES OF ACTION

A.    <u>Jurisdiction of Bankruptcy Court</u>. The Bankruptcy Court shall retain jurisdiction over the Debtor and its Estate as provided for in Article VIII below.

B.    <u>Binding Effect</u>.

Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against the Debtor who held such Claim at any time during the Chapter 11 Case and their respective successors and assigns, whether or not the Claim of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

C.    <u>Term of Injunctions or Stays</u>.

Unless otherwise provided in the Plan, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Chapter 11 Case is closed.

D.    Retention of Rights and Causes of Action.

All present or future rights, claims or causes of action against any Person that existed and which have not been released on or prior to the Effective Date are preserved for the Debtor and its Estate.   On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Debtor shall have possession and control of and the right to enforce and pursue, any and all present or future rights, claims or causes of action, against any Person and with respect to any rights of the Debtor that arose before or after the Petition Date.   In pursuing any claim, right or cause of action, the Debtor, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code.   Except as otherwise provided in the Plan, all causes of action shall survive confirmation and the commencement or prosecution of causes of action shall not be barred or limited by any estoppel, whether judicial, equitable or otherwise.

E.    Preservation of Avoidance Actions.

Notwithstanding anything in the Plan to the contrary, all of the Debtor's avoidance actions under chapter 5 of the Bankruptcy Code are preserved for the Debtor and its Estate and may be pursued by the Debtor.

## VI.
## EXECUTORY CONTRACTS

A.    Executory Contracts and Unexpired Leases.

To the extent not previously rejected, on the Confirmation Date, but subject to the occurrence of the Effective Date, any executory contract or unexpired lease which has not been specifically assumed by the Debtor pursuant to section 365 of the Bankruptcy Code before the Effective Date shall be deemed rejected by the Debtor pursuant to the provisions of section 365 of the Bankruptcy Code.

B.    Rejection Damages Bar Date.

If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease, results in a Claim, then such Claim shall be forever barred and shall not be enforceable against the Debtor or its property unless a proof of claim is Filed with the clerk of the Bankruptcy Court and served upon the Debtor, as applicable, not later than thirty (30) days after the date of service of notice of entry of the Confirmation Order, or such other period set by the Bankruptcy Court.

C.    Effect of Post-Confirmation Rejection.

The entry by the Bankruptcy Court on or after the Confirmation Date of an Order authorizing the rejection of an executory contract or unexpired lease shall result in such rejection being a pre-petition breach under sections 365(g) and 502(g) of the Bankruptcy Code.

# VII.
## CONFIRMABILITY AND SEVERABILITY OF A PLAN AND CRAMDOWN

A.    Confirmability and Severability of a Plan.

Subject to Section 10.07 of the Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan. If the Debtor revokes or withdraws from the Plan then nothing contained herein or in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, or to prejudice in any manner the rights of the Debtor or any persons in any further proceedings involving the Debtor.   A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor' ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.   Each provision of the Plan shall be considered separable and, if for any reason any provision or provisions therein are determined to be invalid and contrary to any existing or future law, the balance of the Plan shall be given effect without relation to the invalid provision.

B.    Cramdown.

The Debtor shall have the right to request and does hereby request, if necessary, that the Bankruptcy Court to confirm the Plan in accordance with section 1129(b) of the Bankruptcy.

# VIII.
## ADMINISTRATIVE PROVISIONS

A.    Retention of Jurisdiction.

Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction for all purposes permitted under applicable law, including, without limitation, the following purposes:

1.    To determine any motion, adversary proceeding, avoidance action, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

2.    To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

3.    To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

4.    To hear and determine objections to the allowance of Claims, whether Filed, asserted or made before or after the Effective Date;

5.    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

6.    To enter, implement, or enforce such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

7.     To issue injunctions, enter and implement other Orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other Order of the Bankruptcy Court;

8.     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, this Disclosure Statement, or any Order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

9.     To hear and determine all Professional Fee Claims;

10.     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, or any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

11.     To take any action and issue such Orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein or in the Plan, or to maintain the integrity of the Plan following consummation;

12.     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

13.     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.     To enter a final decree closing the Chapter 11 Case;

15.     To recover all assets of the Debtor and property of the Estate, wherever located; and

16.     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code and other applicable law.

B.     Governing Law.

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under the Plan shall be governed by the laws of the State of Alabama, without giving effect to principles of conflicts of law of Alabama.

C.     Effectuating Documents; Further Transactions.

The Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

D.     Waiver of Bankruptcy Rules 3020(e) and 7062.

The Debtor may request that the Confirmation Order include (i) a finding that Bankruptcy Rule 7062 shall not apply to the Confirmation Order; and (ii) authorization for the Debtor to consummate the Plan immediately after entry of the Confirmation Order.

E.     No Admissions.

Notwithstanding anything herein or in the Plan to the contrary, nothing contained in the Plan or in this Disclosure Statement shall be deemed as an admission by any Person with respect to any matter set forth herein.

F.     Payment of Statutory Fees.

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with Article IV of the Plan.

G.     Amendments.

1.     *Pre-confirmation Amendment*.   The Debtor may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement pertaining thereto meet applicable Bankruptcy Code requirements of section 1125 of the Bankruptcy Code, among others.

2.     *Post-confirmation Amendment Not Requiring Resolicitation*.   After the entry of the Confirmation Order, the Debtor may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that: (i) the Debtor obtain approval of the Bankruptcy Court for such modification, after notice and a hearing;   and (ii) such modification shall not materially and adversely affect the interests, rights, treatment, or Distributions of any Class under the Plan.

3.     *Post-confirmation Amendment Requiring Resolicitation*.   After the Confirmation Date and before the Effective Date of the Plan, the Debtor may modify the Plan in a way that materially or adversely affects the interests, rights, treatment, or Distributions of a class of Claims provided that: (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtor obtain Bankruptcy Court approval for such modification, after notice to all creditors entitled to receive notice pursuant to the Bankruptcy Code and the Bankruptcy Rules and a hearing; (iii) such modification is accepted by at least two-thirds in amount, and more than one-half in number, of Allowed Claims voting in each class affected by such modification; and (iv) the Debtor comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified.

H.    Successors and Assigns.

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

I.    Confirmation Order and Plan Control.

To the extent the Confirmation Order and/or the Plan is inconsistent with this Disclosure Statement, any other agreement entered into between the Debtor and any third party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order controls the Plan.

## IX.
## VOTING REQUIREMENTS, ACCEPTANCE, CONFIRMATION AND CONSUMMATION OF THE PLAN

A.    General.

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtor, including that: (i) the Plan classifies Claims in a permissible manner;  (ii) the Plan complies with the applicable provisions of the Bankruptcy Code; (iii) the Debtor comply with the applicable provisions of the Bankruptcy Code;  (iv) the Debtor have proposed the Plan in good faith and not by any means forbidden by law;  (v) the disclosure required by section 1125 of the Bankruptcy Code has been made;  (vi) the Plan has been accepted by the requisite votes of holders of Claims, except to the extent that "cram-down" is available under section 1129(b) of the Bankruptcy Code (see below discussion on "Cram-down," Section IX.C); (vii) the Plan is feasible and confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor, unless such liquidation is proposed under the Plan; (viii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan (see Section IX.E entitled "Best Interests of Creditors"); (ix) all fees and expenses payable under 28 U.S.C. § 1930 (relating to bankruptcy fees payable to the clerk of the Bankruptcy Court) have been paid or the Plan provides for the payment of such fees on the Effective Date; (x) if applicable, the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined in section 1114 of the Bankruptcy Code, at the level established at any time prior to confirmation of the Plan pursuant to section 1114 of the Bankruptcy Code, for the duration of the period that the Debtor has obligated itself to provide such benefits; and (xi) the Debtor must have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtor or as successor to the Debtor under the Plan, and the appointment to or continuance in such office by such individual must be consistent with public policy.

The Debtor believes that the Plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code.   Certain of these requirements are discussed in more detail below.   The Debtor has proposed the Plan in good faith.

B.     Acceptance Requirements.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by creditors that hold at least two-thirds in dollar amount and more than one-half in number of the allowed claims of such class who actually vote for acceptance or rejection of a plan. The vote of a holder of a claim may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that the acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

C.     Confirmation Without Acceptance of All Impaired Classes ("Cram-down").

In the event that a plan otherwise satisfies the Bankruptcy Code's requirements for confirmation, but one or more classes of Claims votes to reject the Plan, a debtor has the right to seek confirmation of its plan under the "cram-down" provisions of the Bankruptcy Code.

The Bankruptcy Court can "cram-down" the Plan at the Debtor's request only if at least one impaired Class of Claims, (excluding the votes of insiders), has accepted the Plan and all other requirements of section 1129(a) of the Bankruptcy Code are satisfied.

In addition, the Bankruptcy Court must find that, as to each impaired Class that has not accepted the Plan, the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.

A plan does not "discriminate unfairly" within the meaning of the Bankruptcy Code if the dissenting class will receive value relatively equal to the value given to all other similarly situated classes. A plan is "fair and equitable" within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or interests.

A plan is "fair and equitable" as to a class of secured claims that rejects a plan if the plan provides (a)(i) that the holders of claims included in the rejecting class retain the liens securing those claims whether the property subject to those liens is retained by the debtors or transferred to another entity, to the extent of the allowed amount of such claims, and (ii) that each holder of a claim of such Class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, equal to at least the value of the holder's interest in the estate's interest in such property; or (b) for the realization by such holders of the indubitable equivalent of such claims.

If a class of unsecured claims rejects a plan, the plan may still be confirmed as long as the plan provides (a) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (b) that the holder of any claim or any interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property at all.

If a class of interests rejects a plan, the plan may still be confirmed as long as the plan provides (a) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled,

any fixed redemption price to which such holder is entitled, or the value of such interest, or (b) that the holder of any interest that is junior to the interest of such class will not receive or retain under the plan on account of such junior interest any property at all.

Under the Plan, no holder in a Class of Claims is to receive Cash or other property in excess of the full amount of its Allowed Claim. Moreover, no claim or interest that is junior to the holders of General Unsecured Claims or Litigation Claims will receive any distribution under the Plan. Accordingly, the Debtor believe that the Plan does not discriminate unfairly as to any impaired Class of Claims and is fair and equitable with respect to each such Class under section 1129(b) of the Bankruptcy Code.

D.    Feasibility of the Plan.

In connection with confirmation of the Plan, the Bankruptcy Court will have to determine that the Plan is feasible pursuant to section 1129(a)(11), which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor unless the Plan provides for the liquidation of the Debtor. Since the Plan provides for the liquidation of the Debtor, the Bankruptcy Court will find that the Plan is feasible if it determines that the Debtor will be able to satisfy the conditions precedent to the Effective Date and otherwise have sufficient funds to meet its post-Confirmation Date obligations to pay for the costs of administering and fully consummating the Plan with sufficient funds to proceed with the liquidation of the Debtor's remaining assets. The Debtor believes that the Plan satisfies the financial feasibility requirement imposed by the Bankruptcy Code.

E.    Best Interests of Creditors.

To confirm the Plan over the objections of dissenting holders of impaired Claims, the Bankruptcy Court must also independently determine that the Plan is in the "best interests" of all dissenting holders of Claims impaired under the Plan. Under the "best interests" test, the Bankruptcy Court must find that the Plan provides to each dissenting holder of an impaired Claim a recovery of a value at least equal to the value, as of the Effective Date, of the distribution that each such holder would receive were the Debtor liquidated under chapter 7 of the Bankruptcy Code. Since it is the Debtor' belief that the Plan is comparable to a liquidation, a liquidation under chapter 7 of the Bankruptcy Code would merely increase administrative costs in the form of chapter 7 trustee's fees and other professional fees.

## X.
## CERTAIN RISK FACTORS TO BE CONSIDERED

The formulation of a plan of reorganization or liquidation is the principal purpose of a chapter 11 case. The Plan sets forth the means for satisfying the holders of Claims against the Debtor.

The recovery projections included in this Disclosure Statement are dependent upon certain matters, most of which are beyond the control of the Debtor and some of which may well not materialize. Unanticipated events and circumstances occurring subsequent to the preparation of the projections may affect the actual recoveries. Therefore, the actual recoveries achieved by the

Debtor may vary from the projected recoveries included herein. These variations may be material.

## XI.
## FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The federal income tax consequences of the Plan are complex and subject to significant uncertainties. This Disclosure Statement does not address foreign, state or local tax consequences of the Plan, nor does it purport to address all of the federal income tax consequences of the Plan. This Disclosure Statement also does not purport to address the federal income tax consequences of the Plan to taxpayers subject to special treatment under the federal income tax laws, such as broker-dealers, tax exempt entities, financial institutions, insurance companies, S corporations, small business investment companies, mutual funds, regulated investment companies, foreign corporations, and non-resident alien individuals.

**EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE POTENTIAL FEDERAL, STATE, LOCAL OR FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**IRS Circular 230 Notice: To ensure compliance with requirements imposed by the IRS in Circular 230, you are hereby informed that (i) any tax advice contained in this Disclosure Statement is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Code, (ii) the advice is written to support the promotion or marketing of the transactions or matters addressed in this Disclosure Statement, and (iii) each holder of a Claim should seek advice based on its particular circumstances from an independent tax advisor.**

The Debtor is exempt from federal income tax pursuant to section 501 of the Code. Accordingly, the Debtor does not believe that the implementation of the Plan, including the extinguishment of the Debtor's outstanding indebtedness pursuant to the Plan, will result in any material tax liability to the Debtor.

## XII.
## ALTERNATIVES TO CONFIRMATION OF THE PLAN

The Debtor believes that the Plan affords the holders of Claims the potential for the greatest realization on the Debtor's Assets and, thus, is in the best interests of such holders. If the Plan is not confirmed, however, the alternative would be the liquidation of the Debtor's remaining Assets and distribution to creditors under chapter 7. The Liquidation Fund from which payment to Creditors is to be made exists largely due to the efforts of the Debtor as outlined in this Plan. Moreover, creation of that part of the Liquidation Fund from the sale of the Mortgages for the highest price requires certain knowledge and expertise which the Debtor possesses. Moreover, the Debtor possesses knowledge and information that will allow it to recover the Cash Value from the Principal and will also allow the Estate to reduce the amount of Allowed Claims to those actually owed. Thus, the Debtor believes that the Plan is significantly better for creditors than a chapter 7 liquidation.

## XIII.
## ALTERNATIVE PLANS OF REORGANIZATION

If the Plan is not confirmed, the Debtor or any other party-in-interest in the Chapter 11 Case could propose a different plan or plans. Since the Plan proposed by the Debtor is a plan of liquidation, the Debtor does not believe that an alternative plan could provide greater recoveries than those provided in the Plan. Moreover, the filing of alternative plans would result in additional costs in administering the Chapter 11 Case and significant delays in making distributions.

## XIV.
## CONFIRMATION HEARING

The Court shall set a date and time for hearing on confirmation of the Plan. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned hearing. Any objection to confirmation must be made in writing, filed with the Clerk of the Bankruptcy Court and served upon the Debtor together with proof of service thereof, so as to be <u>ACTUALLY RECEIVED</u> on or before the date set for Confirmation.

Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

At the Confirmation Hearing, the Bankruptcy Court must determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied and, upon demonstration of such compliance, the Bankruptcy Court will enter the Confirmation Order.

## XV.
## CONCLUSION

The Debtor submits that the plan complies in all respects with chapter 11 of the Bankruptcy Code and the Debtor recommends to holders of Claims who are entitled to vote on the plan that they vote to accept the plan.

Respectfully submitted on this 1st day of October, 2024.

HOMETOWN LENDERS, INC.

By: _/s/ William E. Taylor Jr._
       William E. Taylor Jr.
Its: President

_/s/ Kevin D. Heard_ _____
Kevin D. Heard

_/s/ Angela S. Ary_ _____
Angela S. Ary

<u>Of Counsel</u>:
HEARD, ARY & DAURO, LLC
303 Williams Avenue, Suite 921
Huntsville, Alabama 35801
Tel: 256-535-0817
kheard@heardlaw.com
aary@heardlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of October, 2024, I have served a true and correct copy of the **Disclosure Statement of Hometown Lenders, Inc. Dated October 1, 2024,** on (i) the Office of the Bankruptcy Administrator, (ii) the Debtors' 40 largest unsecured creditors, (iii) all counsel of record requesting notice, (iv) the Internal Revenue Service, (v) all secured creditors, (vi) any governmental agencies that request special notice, (vii) all parties having filed a proof of claim in this case, (viii) all those parties listed on the Clerk's matrix, and (ix) all other persons requesting notice, by depositing the same in the United States Mail, postage prepaid and properly-addressed, and/or via electronic mail at the previously-provided e-mail address, unless the party was served as a registered participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama, whereby service was made on the date of issuance by a "Notice of Electronic Filing" pursuant to FRBP 9036 in accordance with subparagraph II.B.4. of the Court's Administrative Procedures as indicated below:

**<u>Notice to be served via CM/ECF electronic notice to:</u>**
Richard Blythe obo Bankruptcy Administrator Richard_Blythe@alnba.uscourts.gov,
courtmaildec@alnba.uscourts.gov
Richard E O'Neal obo the IRS USAALN.BANKRUPTCY@usdoj.gov
Stuart M Maples obo William Taylor, Jr., and Pegrum Creek, LLC smaples@thompsonburton.com ,
kpickett@thompsonburton.com ; smarks@thompsonburton.com
William Marcus Brakefield obo SmartBank   BANKRUPTCY@hsmbb.com; bankruptcy@hubbardfirm.com
Matthew M Cahill obo First Horizon Bank mcahill@bakerdonelson.com, mcleveland@bakerdonelson.com;
dbivins@bakerdonelson.com Edward Franklin Childress, Jr. obo First Horizon Bank fchildress@bakerdonelson.com
Chloe Champion obo IMI Huntsville, LLC   cchampion@burr.com, sgoolsby@burr.com
Heather A Jamison obo IMI Huntsville LLC hjamison@burr.com, sgoolsby@burr.com
Kent D McPhail obo Federal Home Loan Mortgage Corporation bankruptcynotices@mslawyers.law,
KentMcPhailAssociatesLLC@jubileebk.net
Andrew J Shaver obo Tony Perri Sr. & Jr. ashaver@bradley.com, ashaver@ecf.courtdrive.com
Robert J Solomon obo First Horizon Bank rsolomon@sb-law.com, efc-sblaw@sb-law.com;mflower@sb-law.com
Bill D Bensinger obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson bdb@csattorneys.com , bill-
bensinger-5829@ecf.pacerpro.com
Richard E Smith obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson resmith@csattorneys.com
Daniel D Sparks obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson ddsparks@csattorneys.com
Thomas B Humphries obo John H. Taylor, Conrad C Thompson and Kenneth J Wilson
tbhumphries@csattorneys.com

Andrew Pete Cicero, III obo FirstBank acicero@burr.com , mgunnells@burr.com
William M Hancock obo Bank of Frankewing bankruptcy@wolfejones.com , wmhancock@wolfejones.com
Jesse S Vogtle, Jr obo Stanbery Columbia jesse.vogtle@hklaw.com, brooke.freeman@hklaw.com
William Wesley Causby obo Colleen Wood wcausby@memorylegal.com
Travis Johns obo Shawn A Miller travis@travisjohns.law
Colin T. Dean obo Planet Home Lending cdean@mcglinchey.com, epowell@babc.com
Alison L. Archer obo Ohio Attorney General alison.archer@ohioago.gov

**Notice to be served via the e-mail address provided in proof of claim/request for service**:
**See, attached email list.**

**Notice to be served via U.S. Mail**:
Chris Echols, CPA
3sixty Consulting Group, LLC
4513 Allen Hollow Place
Suwanee, GA 30024

NJ Dept of Labor, Div Employer Accounts
Attn: Randall Perry - Senior Tax Examnr
P O Box 379
Trenton, NJ 08625-0379

**A**ll **remaining parties on the attached matrix.**

*/s/ Kevin D. Heard*
Kevin D. Heard